846 P.2d 333

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Jose ROYBAL, Defendant–Appellant.**

No. 13094.

Court of Appeals of New Mexico.

Oct. 14, 1992.

Certiorari Denied Dec. 30, 1992.

Tom Udall, Atty. Gen., Ann M. Harvey, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Sammy J. Quintana, Chief Public Defender, Hilary Lamberton, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

MINZNER, Judge.

Defendant appeals from his convictions for possession of a controlled substance, child abuse, and tampering with evidence as a result of an incident in which three undercover police officers observed him and two others engaged in what they perceived to be a drug transaction at a park. The three co-defendants were tried together. The charges against one co-defendant were dismissed at trial for insufficient evidence; the other co-defendant, Robert Baca, was convicted for trafficking in a controlled substance by distribution. On appeal to this court, his conviction was affirmed by memorandum opinion. *See State v. Baca*, Ct.App. No. 13,072 (filed June 22, 1992), *cert. denied*, 114 N.M. 227, 836 P.2d 1248 (1992).

In this appeal, Defendant raises six issues: (1) failure to prove probable cause to arrest; (2) denial of due process by the state's failure to examine the testifying officers' internal affairs records and the trial court's denial of a defense motion for in camera inspection of those records; (3) error in denial of a motion to sever; (4) the tampering with evidence statute is overbroad and vague; (5) there was insufficient evidence to establish the requisite intent for tampering with evidence; and (6) there was insufficient evidence to establish proof of child abuse. We discuss the facts, where relevant in connection with an issue, when we discuss that issue.

We reverse Defendant's convictions for tampering and child abuse for insufficient evidence to satisfy Defendant's right to due process. We affirm Defendant's conviction for possession, notwithstanding the fact that we conclude the trial court erred in denying Defendant's motion to sever because we conclude the error in denying the motion was harmless.

*Probable Cause*

Defendant argues on appeal, as did his co-defendant, that the trial court erred in determining that the police officers had probable cause to arrest him. Therefore, he contends, the trial court erred in denying his motion to suppress. We conclude that the trial court's decision on the motion to suppress was proper.

"Probable cause [to arrest] exists when the facts and circumstances within the officers' knowledge, and of which they had reasonably trustworthy information, are sufficient to warrant a man of reasonable caution to believe that an offense has been, or is being, committed." *State v. Copeland*, 105 N.M. 27, 31, 727 P.2d 1342, 1346 (Ct.App.1986). On appeal, the trial court's denial of a motion to suppress will not be disturbed if it is supported by substantial evidence. The facts are viewed in a manner most favorable to the state, all reasonable inferences in support of the trial court's decision are indulged in, and all inferences to the contrary are disregarded. Resolution of factual conflicts, credibility, and weight is the task of the trial court. *State v. Boeglin*, 100 N.M. 127, 666 P.2d 1274 (Ct.App.), *rev'd on other grounds*, 100 N.M. 470, 672 P.2d 643 (1983).

Defendant contends that evidence that an informant telephoned the police with information concerning activity at 2249 Lilac, that co-defendant Baca was present at a previous drug crime scene, and that he was known to the police as a heroin dealer, are each independently insufficient to establish probable cause to arrest. We assume but need not decide that the informant's tip by itself would not have established probable cause. *See State v. Therrien*, 110 N.M. 261, 794 P.2d 735 (Ct.App. 1990). However, we review all the evidentiary facts to determine whether the evidence was sufficient, not each piece of evidence on its own. *See Boeglin*, 100 N.M. at 132, 666 P.2d at 1279.

Officers Garcia and Gandara had extensive experience in observing narcotics transactions. Gandara knew the co-defendant to be a heroin user and dealer. Shortly before the arrest, the officers saw a green Volkswagen at the Lilac address, where heroin had been found during the execution of a search warrant several months previously. The co-defendant was seen in that same vehicle in Duranes Park.

He had been present at the Lilac address when the earlier warrant was executed and had been suspected of swallowing heroin on that occasion. From a distance of five to ten feet from the Volkswagen, Garcia saw Defendant hand the co-defendant currency and receive some small items in return. The three officers announced that they were police officers and Defendant dropped some items from his hand to the ground. The foregoing was evidence from which the trial court could have determined that the police officers could have believed that Defendant was engaging in a narcotics transaction. *See Copeland*, 105 N.M. at 31–32, 727 P.2d at 1346–47; *Boeglin*, 100 N.M. at 132, 666 P.2d at 1279.

■ Defendant argues that the inconsistency between Gandara's testimony that she observed the transaction through binoculars and Garcia's testimony that he saw the transaction from a few feet away precludes the establishment of probable cause because it is inherently improbable that the officers could have been in two places at once. We understand that the officers' testimony refers to one transaction. The testimony of neither officer, independent of the other's, was inherently improbable. *See State v. Soliz*, 80 N.M. 297, 454 P.2d 779 (Ct.App.1969) (testimony of single witness was not inherently improbable where it appeared that what was related could have occurred under the circumstances described).

It was for the trial court as fact-finder to resolve any conflict in the testimony of the witnesses and to determine where the weight and credibility lay. *State v. Frazier*, 17 N.M. 535, 131 P. 502 (1913). Here, the trial court determined that Garcia was the most credible of the witnesses who testified at the suppression hearing. The testimony of Garcia alone was sufficient to enable the trial court judge to infer that Garcia observed Defendant engage in a suspicious transaction. *See Soliz*, 80 N.M. at 298, 454 P.2d at 780 (testimony of a single witness is sufficient for a conviction).

*Inspection of Internal Affairs Records*

■ Although Defendant contends that the trial court abused its discretion in refusing to conduct an in camera inspection of the files of Officers Gandara, Salazar, and Garcia, at trial he only moved for in camera inspection of Garcia's files. He cannot claim that the trial court erred in failing to inspect the files of Gandara and Salazar since he did not seek that review below. *See State v. Martinez*, 97 N.M. 316, 639 P.2d 603 (Ct.App.1982). In addition, we note that Defendant's motion for in camera inspection of Garcia's files was made pursuant to *State v. Pohl*, 89 N.M. 523, 554 P.2d 984 (Ct.App.1976). *Pohl* held that it was error to refuse to conduct an in camera inspection of the internal affairs file on an arresting officer where the defendant was charged with battery on a police officer and had shown two prior instances of the officer's alleged misconduct; the defendant showed as specific a need as could be expected under the circumstances of the case. In contrast with the showing made in *Pohl*, Defendant did not make any showing that the internal affairs files contained information material to the preparation of his defense. The newspaper article on which defendant relied, for example, does not cast any doubt on Garcia's credibility. Rather, it asserts that Salazar's affidavit contained false information. Defendant's other appellate arguments regarding disclosure are made for the first time on appeal. As a result, there is no basis for appellate review of these claims. *See State v. Baca*, 111 N.M. 270, 804 P.2d 1089 (Ct.App.1990) (this court reviews the trial court's ruling for reversible error on the grounds on which defendant based his objection at trial).

*Motion to Sever*

The co-defendants advised the trial court that they would seek to have Defendant's suppression hearing testimony admitted at trial as the prior testimony of an unavailable witness. The suppression hearing testimony was offered to prove that the police officers attempted to persuade Defendant to testify against his co-defendants. As the court summarized the tender, at least

one of the police officers told Defendant: " 'If you turn an informant, then we won't press charges against you, and you and your family can go[.]' "

■ Initially, Defendant did not object to the admission of his prior testimony. However, as soon as the trial court ruled that the state could introduce evidence of Defendant's prior convictions to impeach that testimony, Defendant objected and moved to sever his trial. Defendant's motion to sever is inconsistent with the notion that he waived any objection to admission of his prior testimony; the very purpose of the motion was to avoid admission of the prior testimony. We conclude he preserved the issue he argues on appeal because he alerted the trial court to his objections as soon as they arose. *See State v. Montoya,* 80 N.M. 64, 451 P.2d 557 (Ct.App.1968).

■ The standard of review for denial of a motion to sever is abuse of discretion. *State v. Montoya,* 114 N.M. 221, 836 P.2d 667 (Ct.App.1992); *State v. Pacheco,* 110 N.M. 599, 798 P.2d 200 (Ct.App.1990). To succeed in proving error, the defendant must make a showing that he suffered prejudice by the joinder. *Id.* Further, "[e]ven when inadmissible evidence is introduced in a joint trial, reversal of a denial of severance is not automatic." *Montoya,* 114 N.M. at 224, 836 P.2d at 670.

We note that the language of the relevant rule has changed since this court's decision in *State v. Volkman,* 86 N.M. 529, 525 P.2d 889 (Ct.App.1974). *Compare* SCRA 1986, 5–203(C) (Repl.1992) ("If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants by the filing of a statement of joinder for trial, the court may order separate trials of offenses, grant a severance of defendants, or provide whatever other relief justice requires.") *with* NMSA 1953, 2d Repl. Vol. 6 (1972), § 41–23–34 (Supp.1975) Rule of Criminal Procedure 34(b) (" 'Upon motion, any defendant shall be granted a separate trial as of right * * * (2) if the court finds that the prosecution probably will present evidence against a joint defendant, other than reputation or character evidence, which would not be admissible in

a separate trial of the moving defendant.' "), *quoted in Volkman,* 86 N.M. at 530, 525 P.2d at 890.

■ Notwithstanding the change in the rule, ordinarily an initial step in the analysis is whether the evidence in question would not have been admissible in a separate trial of the moving defendant. *See Montoya,* 114 N.M. at 224, 836 P.2d at 670. In this case, the parties do not dispute that the evidence of Defendant's convictions would not have been admissible had he been separately tried. The evidence was offered to impeach his credibility under SCRA 1986, 11–609, solely because his co-defendants wished to rely on his suppression hearing testimony. It would not have been admissible for the same purpose at a separate trial at which Defendant chose not to testify. The state has not suggested that it would have been admissible for any other purpose, or that we should assume Defendant might have chosen to testify had he been tried separately. We conclude that the evidence would not have been admissible in a separate trial.

The next question is whether the trial court, once it decided to admit the evidence, erred in denying the motion to sever.

> On review of such a decision we must decide whether, due to the joint trial, there is an appreciable risk that the jury convicted for illegitimate reasons. This inquiry necessarily involves consideration of the degree of prejudice caused a defendant by the joint trial and of the strength of the legitimate evidence arrayed against that defendant.

*Montoya,* 114 N.M. at 224, 836 P.2d at 670 (citation omitted).

■ Generally, proof of other crimes has a tendency to prejudice the minds of the triers of fact and to predispose them to a belief in the accused's guilt. *See State v. Rowell,* 77 N.M. 124, 419 P.2d 966 (1966); R. 5–203(C) committee commentary (examples of when prejudice may be shown include where combined trial might result in admissibility of evidence of other crimes not normally admissible under SCRA 1986, 11–404(B)). Actual prejudice, however, is

not shown unless there is an appreciable risk that the jury convicted for illegitimate reasons. *See State v. Ramming*, 106 N.M. 42, 738 P.2d 914 (Ct.App.) (evidence not devastating in its effect against defendant), *cert. denied*, 484 U.S. 986, 108 S.Ct. 503, 98 L.Ed.2d 501 (1987).

The grant or refusal of severance is reversed only upon a showing of an abuse of discretion. *State v. Gallegos*, 109 N.M. 55, 64, 781 P.2d 783, 792 (Ct.App.1989). Under the equivalent federal rule of criminal procedure, the "review on appeal is limited to whether ' * * * the joint trial [was] so prejudicial * * * as to require the exercise of that discretion in only one way, by ordering a separate trial * * *.' " *United States v. Ragghianti*, 527 F.2d 586, 587 (9th Cir. 1975) (quoting *Parker v. United States*, 404 F.2d 1193, 1194 (9th Cir.), *cert. denied*, 394 U.S. 1004, 89 S.Ct. 1602, 22 L.Ed.2d 782 (1969)). The test for prejudice under the federal rule is to demonstrate that under all the circumstances, the jurors would be unable "to follow the court's instructions and keep separate the evidence that is relevant to each defendant." 9 *Federal Procedure (Lawyers Edition)* § 22:623 (Thomas J. Goger, et al., eds. 1982). "It is not enough to simply show that joinder makes it more difficult [for the defendant to defend against the state's case,] * * * or that a separate trial might offer him a better chance of acquittal." *Id.* at § 22:624 (footnotes omitted).

■ In the recent case of *State v. Gonzales*, 113 N.M. 221, 824 P.2d 1023 (1992), our supreme court considered whether a defendant showed prejudice that would require severance of the charges of felon in possession of a firearm from other counts because evidence of a prior conviction would otherwise be inadmissible at a trial on the other counts. *Gonzales* declined to adopt a per se rule requiring severance and held that the defendant did not show prejudice to require severance where the jury was not given details surrounding the conviction, the prior conviction was very dissimilar, and the jury was twice given limiting instructions that they were presumed to have followed. In view of the rule

change since *Volkman* was decided, we interpret *Gonzales* as requiring Defendant to establish actual prejudice. *See State v. Saavedra*, 103 N.M. 282, 705 P.2d 1133 (1985); *cf. Ragghianti*, 527 F.2d at 587–88 (dealing with joinder of offenses).

■ The evidence of Defendant's guilt on the possession offense was overwhelming. *See State v. Martinez*, 99 N.M. 48, 52, 653 P.2d 879, 883 (Ct.App.1982) (where other evidence overwhelmingly establishes proof of defendant's guilt, admission of evidence objected to is harmless). Conflicts in the officers' testimony did not render the state's case weak; the only significant inconsistency related to the site from which Defendant's conduct was first observed. We conclude the trial court's instruction would have been sufficient to cure any prejudice had the possession offense been the only charge. However, Defendant was also charged and convicted of two other offenses. The evidence offered in support of these offenses was not overwhelming, and in fact Defendant challenges both convictions as based on insufficient evidence. Under the circumstances of this case, we believe there is an appreciable risk that Defendant was convicted on these counts for illegitimate reasons. However, for the reasons that follow, in discussing the last two issues on appeal we also conclude that neither of these convictions was based on sufficient evidence to satisfy Defendant's constitutional right to due process. *See State v. Garcia*, 114 N.M. 269, 837 P.2d 862 (1992). Because we reverse and remand with instructions to dismiss these convictions, we conclude that reversing and remanding for a new trial on the possession conviction would not change the result.

Therefore, we hold that the trial court's decision denying Defendant's motion to sever his trial from that of his co-defendants did not result in reversible error. *See State v. Wright*, 84 N.M. 3, 498 P.2d 695 (Ct.App.1972) (error must be prejudicial to be reversible). On appeal, error will not be corrected if correction will not change the result below. *Wright v. Brem*, 81 N.M. 410, 467 P.2d 736 (Ct.App.1970).

*Constitutionality of Tampering with Evidence Statute*

Defendant contends that the statute is overbroad because it subjects him to criminal prosecution for exercising his right against self-incrimination. *See State v. Gattis,* 105 N.M. 194, 197, 730 P.2d 497, 500 (Ct.App.1986) (overbroad statute sweeps within its ambit those actions ordinarily deemed to be constitutionally protected). He also contends that the statute is vague. *State v. Ramirez,* 89 N.M. 635, 556 P.2d 43 (Ct.App.1976). Defendant's vagueness claim is based in part on the contention that common persons must guess at the meaning of the statute due to the broad meaning of the verb "place." We do not address either argument because we conclude that there is insufficient evidence to support the conviction for tampering under the instruction given.

*Sufficiency of Evidence to Support Conviction for Tampering with Evidence*

▮▮▮ Under the instruction given, the state was required to prove beyond a reasonable doubt that Defendant "placed heroin" and "intended to prevent [his] apprehension, prosecution or conviction." *See* SCRA 1986, 14–2241. Defendant claims that this proof was lacking because there was no proof that he knew the persons who approached him were police officers. Salazar testified that he and the other two officers approached simultaneously and identified themselves as police officers. Assuming that proof of Defendant's knowledge was required, Salazar's testimony was evidence from which the jury could have inferred that Defendant knew the three persons were police officers. *See State v. Lankford,* 92 N.M. 1, 582 P.2d 378 (1978). Nevertheless, there was insufficient evidence of specific intent to support the conviction under the instruction given.

The word "place" as used in the instruction indicates an act of putting evidence in a particular place and suggests a definite location. We think the state so narrowly stated the act of which Defendant was accused that it failed to describe the evidence in this case.

*People v. Frayer,* 661 P.2d 1189 (Colo.Ct. App.1982), *aff'd,* 684 P.2d 927 (Colo.1984), exemplifies the type of behavior that ordinarily underlies a successful conviction for tampering with evidence. In *Frayer,* an alert pharmacist suspected that a phoned-in prescription was phony. After checking with the doctor and confirming his suspicion, the pharmacist alerted the police that a "Nancy Burns" was heading to the store to pick up the illegally-ordered narcotic. The police were waiting outside the store when the defendant walked out with the drug, which was packaged in a glass bottle. A police officer identified himself and ordered her to stop. The defendant tried to get into a waiting car, but the officer grabbed her by the arm and told her she was under arrest. The defendant reacted by throwing the bag containing the bottle toward the waiting car. The officer then retrieved the bottle, but the defendant grabbed it from him again, breaking it. From the circumstances surrounding the defendant's arrest, the Colorado Court of Appeals concluded that sufficient evidence existed to sustain the jury's verdict. The Colorado Supreme Court agreed with the lower court's conclusion, noting that Frayer's conduct at the time of the arrest sufficiently established the requisite intent to interfere with the availability of the drug at a prospective official proceeding. *Frayer,* 684 P.2d at 929. The court said "the offense of tampering with physical evidence depends, to an important degree, on the defendant's conduct and intent." *Id.*

*Frayer* illustrates the kind of overt act which supports a tampering charge. The defendant in this case did not let the bottle fall from her hand, but threw it away from the police officer twice, and only after the officer identified himself and informed her that she was under arrest. The circumstances make it relatively easy to infer her intent to thwart the officer's investigation.

*State v. Papillion,* 556 So.2d 1331 (La. Ct.App.1990), is an example of a more typical tampering case, in that the defendant reacted to the presence of police officers at his home by slamming the door, running into the bathroom, and flushing things

down the toilet. The police were able to retrieve five bullets from the toilet, but were unable to retrieve any drugs. The defendant was charged with possession of cocaine and obstruction of justice, and convicted on both counts. On appeal, the defendant claimed that the evidence was insufficient to sustain the convictions. The reviewing court disagreed and affirmed. Although the state was unable to establish what the defendant was trying to get rid of, the court found that one could infer that the defendant was trying to hide incriminating evidence, given that cocaine and drug paraphernalia were seized from his apartment. This case is instructive because, like *Frayer*, it illustrates the kinds of acts necessary to infer intent to tamper with evidence.

The defendant in *State v. McKimmie*, 232 Mont. 227, 756 P.2d 1135 (1988), discarded the rifle he used to shoot his wife. He argued on appeal that he was too distraught to have formed the requisitive mental state; therefore, his conviction for tampering with evidence should be reversed. The court disagreed, finding that the defendant's mental state was established by his conduct. The defendant had removed and concealed the rifle, which was sufficient to indicate that he realized an official investigation would occur, and he wanted to make sure that the rifle would not be found. His conviction for tampering was affirmed.

In all of these cases, the defendants actively sought to disrupt the investigatory process. In each case, there was evidence that the defendant committed one of the acts of "tampering" listed in NMSA 1978, Section 30–22–5 (Repl.Pamp.1984) ("destroying, changing, hiding, placing or fabricating any physical evidence"). Defendant's actions surely indicate an immediate reaction to the predicament in which he found himself. Nevertheless, they do not prove beyond a reasonable doubt that he formed a specific intent to thwart the officers. *See Garcia*, 114 N.M. at 275, 837 P.2d at 868. Further, while Defendant might be said to have tried to conceal the evidence by dropping it to the ground, there is no evidence that he acted to "place" the heroin in a particular location. Under these circumstances, we conclude that the conviction for tampering is not supported by sufficient evidence either of intent or of an act listed in the statute. *Id.*

### Sufficiency of Evidence to Support Conviction for Child Abuse

■ Defendant also argues that the state failed to prove that he acted or failed to act with the result that his daughter's life or health was endangered. We agree.

Defendant's six-year-old daughter was in the car with her mother, Defendant's wife, at the time of the transaction underlying Defendant's possession conviction. Defendant's car was ten or fifteen feet away from the car in which his co-defendants arrived. The police officers who apprehended Defendant and his co-defendants were armed, and one of the co-defendants resisted arrest.

The state's theory is that Defendant's conduct placed his daughter's life or health in danger, because the transaction was one that might be attended by violence. On the record before us, this charge was not supported by substantial evidence indicating that Defendant's daughter was in fact placed in danger. Under these circumstances, we conclude that this conviction, like that of tampering, is not supported by sufficient evidence to satisfy Defendant's constitutional right to due process. *See Garcia*, 114 N.M. at 274, 837 P.2d at 867.

### Conclusion

We affirm Defendant's conviction for possession. We reverse his convictions for tampering and for child abuse. We remand for entry of an amended judgment and sentence.

IT IS SO ORDERED.

DONNELLY and CHAVEZ, JJ., concur.