**Certiorari Denied, December 21, 2011, No. 33,317**

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2012-NMCA-012**

**Filing Date: October 24, 2011**

**Docket No. 30,779**

**STATE OF NEW MEXICO,**

      **Plaintiff-Appellee,**

**v.**

**DARWIN ETSITTY,**

      **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Thomas J. Hynes, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Ralph E. Trujillo, Assistant Attorney General
Albuquerque, NM

for Appellee

Liane E. Kerr
Albuquerque, NM

for Appellant

### OPINION

**VANZI, Judge.**

**{1}**    This case presents another twist on the question of when a defendant can be successfully prosecuted for both driving while intoxicated (DWI) and child abuse by endangerment. A jury found Defendant guilty of DWI by actual physical control and child abuse by endangerment. Defendant does not challenge his DWI conviction. Instead, he raises one issue on appeal, contending that the district court erred in denying his motion for

1

directed verdict because there was insufficient evidence to support a conviction for child abuse when that conviction was based upon a DWI that had not yet occurred. We agree with Defendant and reverse his child abuse by endangerment conviction.

## BACKGROUND

**{2}** Defendant was charged with DWI, contrary to NMSA 1978, Section 66-8-102 (2008) (amended 2010), and child abuse by endangerment, contrary to NMSA 1978, Section 30-6-1(D)(1) (2009), in relation to an incident that occurred in January 2010. The State called two witnesses at trial. Officers Eric Jennings and Joseph Schake testified that they were on duty conducting a "warrant round-up" at a trailer park in Farmington, New Mexico, when they saw Defendant's pickup truck parked outside of a residence. Believing that Defendant may have been the individual they were pursuing, the officers approached the truck and made contact with Defendant, who was seated in the vehicle. The officers testified that they observed Defendant seated in the driver's seat of the truck, with his wife in the middle, and his four-year-old child on the other end of the truck's front bench seat. The vehicle was not running, and Defendant was holding the keys in his hand. In the process of confirming that Defendant was not the subject of the warrant, the officers observed that there were open alcohol containers in the cup holders and on the floor of the vehicle. They testified that Defendant had bloodshot and watery eyes, spoke with slurred speech, and smelled of alcoholic beverages. Officer Jennings testified that Defendant informed him that he, his wife, and his child had just stepped out of the house and that they were "loading up" the vehicle and "leaving here" to go to a local store.

**{3}** Based on his observations, Officer Jennings began a DWI investigation. He administered field sobriety tests to Defendant and observed that Defendant was unable to keep his balance and could not perform the tests as instructed. Based on Defendant's statements and the officers' observations, Defendant was placed under arrest for suspicion of DWI. Defendant was transported to the police station where he provided two breath samples, both of which resulted in alcohol concentration readings of .15 grams per 210 liters of breath.

**{4}** The State rested after the two officers testified, and Defendant then moved for a directed verdict on the child abuse charge. Defendant argued that no evidence had been presented to support a child abuse conviction—the child had merely been sitting inside a nonmoving vehicle. The district court denied the motion, and Defendant was convicted on both the DWI and child abuse by endangerment charges. This appeal followed.

## DISCUSSION

### Standard of Review

**{5}** Defendant challenges his conviction for child abuse by endangerment, arguing that the misdemeanor DWI charge in this case does not support the conviction for felony child abuse. He does not challenge his DWI conviction, and it is thus not a part of this appeal.

The parties agree that the question of whether the underlying DWI misdemeanor supports a finding of felony child abuse goes to the sufficiency of the evidence.

**{6}**     We begin our sufficiency of the evidence analysis by first reviewing the elements required to prove child abuse by endangerment. To convict Defendant of child abuse by endangerment, the State had the burden of proving beyond a reasonable doubt that Defendant caused a child to be placed in a situation that endangered his life or health and did so with reckless disregard for the safety of the child. *See* § 30-6-1(A)(3), (D)(1). Reckless disregard requires that Defendant "knew or should have known [his] conduct created a substantial and foreseeable risk, [he] disregarded that risk and [he] was wholly indifferent to the consequences of the conduct and to the welfare and safety of [the child]." UJI 14-604 NMRA. We have said that child abuse by endangerment, as opposed to physical abuse of a child, is a special classification designed to address situations where an accused's conduct exposes a child to a significant risk of harm, "even though the child does not suffer a physical injury." *State v. Ungarten*, 115 N.M. 607, 609, 856 P.2d 569, 571 (Ct. App. 1993), *abrogated on other grounds by State v. Chavez*, 2009-NMSC-035, 146 N.M. 434, 211 P.3d 891.

**{7}**     Having set forth the statutory requirements of child abuse by endangerment, we apply a substantial evidence standard to determine the sufficiency of the evidence at trial. *State v. Treadway*, 2006-NMSC-008, ¶ 7, 139 N.M. 167, 130 P.3d 746. On a sufficiency of the evidence challenge, the relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Perea*, 2001-NMSC-026, ¶ 5, 130 N.M. 732, 31 P.3d 1006. In performing this analysis, "we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. "The reviewing court does not weigh the evidence or substitute its judgment for that of the fact finder as long as there is sufficient evidence to support the verdict." *State v. Mora*, 1997-NMSC-060, ¶ 27, 124 N.M. 346, 950 P.2d 789, *abrogated on other grounds as recognized by Kersey v. Hatch*, 2010-NMSC-020, 148 N.M. 381, 237 P.3d 683.

**There Was Insufficient Evidence to Support a Conviction for Felony Child Abuse by Endangerment**

**{8}**     To date, every appellate case in New Mexico upholding a child endangerment conviction has involved a situation where a defendant was actually driving while intoxicated with a child in the vehicle. *See, e.g.*, *State v. Santillanes*, 2001-NMSC-018, ¶¶ 2, 38, 130 N.M. 464, 27 P.3d 456 (upholding the defendant's child abuse conviction when he drove drunk and collided with an oncoming vehicle, resulting in the death of four children); *State v. Chavez*, 2009-NMCA-089, ¶ 14, 146 N.M. 729, 214 P.3d 794 (holding that a defendant who drove drunk with her six-year-old in the car was guilty of child endangerment); *State v. Watchman*, 2005-NMCA-125, ¶¶ 4-5, 138 N.M. 488, 122 P.3d 855 (holding that there was sufficient evidence to find the defendant guilty of child abuse when she drove drunk to a bar with her child and then left the child in a dangerous parking lot alone); *State v. Montoya*,

3

2005-NMCA-078, ¶¶ 2, 4, 137 N.M. 713, 114 P.3d 393 (concluding that evidence that the defendant was drunk while driving with unrestrained children in his truck was sufficient to prove child abuse). These cases clearly establish that a defendant who is driving while intoxicated with a child in the vehicle can be charged and convicted of child abuse by endangerment.

{9}    Difficulties arise, however, when an intoxicated defendant is not driving but rather is in a nonmoving vehicle with a child present. Our Supreme Court recognized in *Chavez* that, "[t]aken literally, our endangerment statute could be read broadly to permit prosecution for any conduct, however remote the risk, that '*may* endanger a child's life or health.'" 2009-NMSC-035, ¶ 16 (alteration omitted). The Court then clarified that "by classifying child endangerment as a third-degree felony, our Legislature anticipated that criminal prosecution would be reserved for the most serious occurrences, and not for minor or theoretical dangers." *Id.* In light of the Supreme Court's more restrictive view of the child abuse statute set forth in *Chavez*, this Court recently had the opportunity to discuss and provide guidance on what constitutes a "theoretical danger" for purposes of a child abuse charge in a DWI context. Specifically, we considered whether a conviction for child abuse could be sustained when the intoxicated driver was in a nonmoving vehicle. We held that it could not.

{10}    In *State v. Cotton*, we reversed the defendant's conviction for child abuse by endangerment when the defendant was intoxicated while seated in the driver's seat of his vehicle with his girlfriend and four children. 2011-NMCA-096, ¶¶ 21-22, 150 N.M. 583, 263 P.3d 925, *cert. denied*, 2011-NMCERT-008, 268 P.3d 513 (No. 33,163, Aug. 29, 2011). The defendant's vehicle was parked by the side of the road, it was not running, and the keys were not in the ignition. *Id.* ¶ 21. Further, suspecting that the defendant and his girlfriend were intoxicated, the officer questioned the defendant, who admitted that he had recently consumed alcohol. *Id.* ¶ 1. Significantly, DWI by actual physical control was not charged or argued in that case; however, the State's child abuse claim relied on the theory that "the possibility that [the d]efendant might drive" placed the children in a situation that endangered their lives and health. *Id.* ¶ 16. We explained that, while "driving impaired with children in the car could cause grave harm depending on the circumstances, the possibility that [the d]efendant might drive is a theoretical danger—the exact type of danger our Legislature did not intend to bring within the ambit of Section 30-6-1." *Cotton*, 2011-NMCA-096, ¶ 21. Accordingly, we held that the theoretical danger to the children posed by the possibility of the defendant's impaired driving was insufficient to support a child abuse conviction. *Id.* ¶ 22.

{11}    *Cotton* was not yet decided when the parties filed their briefs in this case and, as a result, they could not have foreseen its applicability here. Nevertheless, the analysis and holding in that case are relevant to our decision today. As in *Cotton*, the evidence in this case for the child abuse by endangerment charge was the same evidence presented in relation to the DWI charge. We briefly review the facts at the point in time when Defendant was intercepted by the police. Defendant was sitting outside a residence in the driver's seat of a pickup truck, a female was in the middle seat, and a child was on the other end of the front bench seat; Defendant appeared to be impaired; the keys were in his hand; he told the

4

officers he was planning on going to a local store; he was arrested; and he never drove the truck. This conduct supported Defendant's conviction of DWI by actual physical control (and he does not challenge that conviction). However, we conclude that it does not rise to the level required by our child abuse statute. Clearly, had Defendant carried out his intentions and begun to drive with his child in the car, or had there been evidence that Defendant was driving while intoxicated prior to his contact with the police, he could have been convicted of child abuse by endangerment. But without evidence of actual driving, Defendant had not yet put the child in real peril.

**{12}**    Although the defendant in *Cotton* was not charged with DWI by actual physical control, we find no reason to depart from the rationale in that case merely because Defendant here admitted that he intended to drive and was ultimately convicted of DWI by actual physical control. DWI by actual physical control by its very nature relies on the possibility of future conduct, and its departure from the typical requirement of criminal actus reus is unique. In *State v. Sims*, our Supreme Court modified existing DWI by actual physical control law, requiring two elements to secure a conviction: "(1) the defendant was actually, not just potentially, exercising control over the vehicle, and (2) the defendant had the general intent to drive so as to pose a real danger to himself, herself, or the public." 2010-NMSC-027, ¶ 4, 148 N.M. 330, 236 P.3d 642. Recognizing the consequence of the above requirements, the Court then noted that the elements of DWI by actual physical control make it "analytically similar to an attempt crime." *Id.* ¶ 27; *see* NMSA 1978, § 30-28-1 (1963) (requiring "an overt act in furtherance of and with intent to commit a felony and tending but failing to effect its commission" to convict for an attempt to commit a felony); *cf. State v. Johnson*, 2001-NMSC-001, ¶ 19, 130 N.M. 6, 15 P.3d 1233 (equating "actual physical control" with being "in a situation in which [drivers] can directly commence operating a vehicle while they are intoxicated"); *Atkinson v. State*, 627 A.2d 1019, 1025 (Md. 1993) (noting that the view among many states is that the purpose of the "actual physical control" language in DWI provisions is preventive, aimed to protect the public from what inebriated individuals "might" do).

**{13}**    If interpreted in an overly-broad manner, our Supreme Court's analysis for DWI by actual physical control set forth in *Sims* may cause unintended consequences if extended to the child abuse context. Allowing actual physical control without requiring the act of driving to operate as a basis for a child abuse by endangerment charge effectively turns the child abuse charge into an attempted crime as well. In other words, Defendant here was convicted of committing an overt act in furtherance of and with the intent to commit child abuse, but at the point when Defendant was intercepted by the officers, the crime of child abuse had not yet been completed. Allowing a conviction for child abuse to stand on these facts would create liability for an inchoate crime where none was charged or otherwise shown to have been intended by the Legislature.

**{14}**    In *State v. Roybal*, we determined that mere proximity to a dangerous situation was insufficient to support a conviction for child abuse by endangerment. 115 N.M. 27, 34, 846 P.2d 333, 340 (Ct. App. 1992). In *Roybal*, the defendant left his wife and child in a car approximately ten or fifteen feet away while he bought heroin. *Id.* When police officers arrived on the scene, one of the co-defendants resisted arrest. *Id.* Although the drug

transaction could well have resulted in violence, we concluded that there was insufficient evidence that the child "was in fact placed in danger." *Id.* Likewise, in this case, while Defendant's actions prior to being intercepted by police could have resulted in Defendant driving while intoxicated thereby placing his young passenger in danger, Defendant had not yet "in fact placed [the child] in danger." *See id.* While we appreciate the seriousness of the potential danger to the minor child had Defendant driven the car, we hold that there was insufficient evidence to convict Defendant of child abuse by endangerment under the facts of this case.

**CONCLUSION**

**{15}** For the foregoing reasons, Defendant's child abuse conviction is reversed.

**{16}** **IT IS SO ORDERED.**

_____
**LINDA M. VANZI, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Judge**

_____
**J. MILES HANISEE, Judge**

**Topic Index for *State v. Etsitty*, No. 30,779**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-SR | Standard of Review |
| AE-SB | Substantial or Sufficient Evidence |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-CN | Child Abuse and Neglect |
| CL-DG | Driving While Intoxicated |
| | |
| **CA** | **CRIMINAL PROCEDURE** |
| CA-DV | Directed Verdict |