This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                    **NO. 30,918**

**LORI TRUJILLO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**Don Maddox, District Judge**

Gary K. King, Attorney General
Margaret McLean, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Acting Chief Public Defender
Will O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

# MEMORANDUM OPINION

**BUSTAMANTE, Judge.**

Defendant appeals her convictions for possession of cocaine and for trafficking methamphetamine (by possession with intent to distribute). On appeal, Defendant

argues that: (1) fundamental error was committed when the district court failed to instruct the jury that Defendant's presence in the vicinity of the drugs or the location of the drugs is not, by itself, possession; (2) trial counsel provided ineffective assistance of counsel by failing to tender a jury instruction on the definition of possession; (3) there was insufficient evidence to support her convictions; and (4) her sentence violates her right to be free from cruel and unusual punishment. We affirm.

**BACKGROUND**

This case stems from the search of a home that Defendant shared with several people. Defendant, her son, and her grandmother lived in the grandmother's house. On the day of the search at issue, a man had just moved in and had brought all of his belongings. Ironically, Defendant precipitated the search by calling the police to complain that the person who had moved in had stolen property in his possession. Pursuant to her call, agents performed a "knock and talk" at Defendant's home. Defendant's son answered the door and let the agents inside. Once inside, the agents observed three or four people that they knew to be associated with narcotics. Agents also observed drug paraphernalia and stolen property.

Based on their observations, the agents obtained a search warrant for the home. As a result of the search, agents found drug paraphernalia in Defendant's bedroom. Agents found a black bag in Defendant's bedroom closet, containing

methamphetamine, cocaine, drug paraphernalia, and credit cards belonging to another person. Also in Defendant's bedroom, agents found surveillance equipment that showed the exterior of the house.

At trial, conflicting evidence was introduced with regard to whether Defendant knew about the black bag and its contents. Agent Riley testified that, during the search, Defendant told him that the bedroom where the drugs and paraphernalia were found was her bedroom, that the black bag containing the drugs was hers, and that she had placed the credit cards in the bag. Agent Kemp, however, testified that when he asked Defendant about the drugs and paraphernalia, Defendant said they were not hers and instead belonged to other people who were present in the home at the time. Consistent with her statements to Agent Kemp, at trial, Defendant denied making any admissions to Agent Riley during the search. Defendant denied even being present during the search and having ever seen any of the seized items. Defendant maintained that she had never seen the black bag and its contents, did not know to whom the black bag belonged, and did not know how the bag got into her closet.

After hearing the evidence, the jury convicted Defendant of possession of cocaine and possession of methamphetamine with intent to distribute. Defendant now appeals challenging the adequacy of the jury instructions, the effectiveness of her trial counsel, the sufficiency of the evidence, and the constitutionality of her sentence. We

3

address additional facts as necessary in the context of the specific issues as discussed below.

**The Failure to Include a Jury Instruction Defining Possession did not Rise to the Level of Fundamental Error**

Defendant's submitted jury instruction for possession of cocaine required the jury to make findings that Defendant had cocaine in her possession and that Defendant knew it was cocaine. *See* NMSA 1978, § 30-31-23(D) (2011). Defendant's submitted jury instruction for trafficking required the jury to find that Defendant had methamphetamine in her possession; that Defendant knew it was methamphetamine; and that Defendant intended to transfer it to another. *See* NMSA 1978, § 30-31-20(A)(3) (2006). Defendant argues for the first time on appeal that the submitted jury instructions were inadequate because the jury should have additionally been given a jury instruction that defines possession.

UJI 14-3130 NMRA defining possession states:

A person is in possession of a substance when he knows it is on his person or in his presence, and he exercises control over it.

Even if the substance is not in his physical presence, he is in possession if he knows where it is, and he exercises control over it.

Two or more people can have possession of a substance at the same time.

4

*A person's presence in the vicinity of the substance or his knowledge of the existence or the location of the substance, is not, by itself, possession.* (Emphasis added.)

Defendant specifically argues that the district court should have instructed the jury on the portion of UJI 14-3130 emphasized above, and asserts that absent such instruction "there is a distinct possibility that the jury found [her] guilty because she was in proximity to the drugs rather than because she exercised dominion and control over the drugs." Defendant argues that, without the instruction defining possession, she might have been convicted just because the drugs and paraphernalia were found in the house in which she lived and shared with others.

"The standard of review we apply to jury instructions depends on whether the issue has been preserved." *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134. If the issue has been preserved, we review the instructions for reversible error. *Id.* If the issue has not been preserved, we review for fundamental error. *Id.* Here, Defendant acknowledges that she did not tender a requested jury instruction of her own which defined possession or otherwise object to the instructions as given at trial. Thus, we review Defendant's argument only for fundamental error. *Id.* (applying a fundamental error standard of review for jury instruction issues that have not been preserved); Rule 12-216(B)(2) NMRA (providing appellate court discretion as an exception to the preservation rule to review questions involving

fundamental error). "Error that is fundamental must go to the foundation of the case or take from the defendant a right which was essential to his defense and which no court could or ought to permit him to waive." *State v. Reed*, 2005-NMSC-031, ¶ 52, 138 N.M. 365, 120 P.3d 447 (internal quotation marks and citation omitted). Fundamental error power is exercised only to correct injustices that shock the conscience of the court, a term that has been used in our precedent "both to describe cases with defendants who are indisputably innocent, and cases in which a mistake in the process makes a conviction fundamentally unfair notwithstanding the apparent guilt of the accused." *State v. Barber*, 2004-NMSC-019, ¶ 17, 135 N.M. 621, 92 P.3d 633.

In addressing whether the absence of a jury instruction defining possession constituted fundamental error, we turn to *Barber* for guidance. *Id.* ¶¶ 8-19. In *Barber*, officers found drugs and paraphernalia on top of a toilet in a motel room bathroom. *Id.* ¶ 3. The defendant, who was also found in the bathroom, claimed he was only in the motel to take a shower. *Id.* ¶ 6. He admitted that he saw the drugs and knew what they were, but claimed that he did not touch them because they were not his. *Id.* ¶ 11. The defendant further emphasized that there were four admitted methamphetamine users in and around the motel room, thereby suggesting that the drugs belonged to one or all of them. *Id.* Whether or not the defendant possessed the drugs or was simply

6

in proximity to them was a vital issue in the case. *Id.* ¶ 12. Like the present case, the defendant argued on appeal that a jury instruction defining the difference between possession and mere proximity was required, but had failed to request such instruction below. *Id.* ¶ 7.

In reviewing for fundamental error, *Barber* relied on the following framework of analysis: We initially determine whether the defendant would have been entitled to the definitional jury instruction for possession. *Id.* ¶ 9. If such an instruction would have been appropriately given, we then determine whether a reasonable juror would have been confused or misdirected by the submitted jury instructions. *Id.* ¶ 19. And if we conclude that a reasonable juror would have been confused or misdirected, we "review the entire record, placing the jury instructions in the context of the individual facts and circumstances of the case, to determine whether the [d]efendant's conviction was the result of a plain miscarriage of justice. *Id.* (Baca, J., dissenting) (quoting *Benally*, 2001-NMSC-033, ¶ 24). Applying this analysis, *Barber* concluded that a jury instruction defining possession would have been given if sought and that the potential for juror confusion existed from the lack of such instruction. *Barber* ultimately concluded, however, that there was no reasonable likelihood that the jury had been confused in light of other evidence from which the jury could have inferred that the drugs and paraphernalia belonged to the defendant. And, even assuming that

the jury instruction was defectively ambiguous without the definition of possession, *Barber* further concluded that the jury instructions as a whole cured the defect because the jury's verdict of trafficking methamphetamine necessarily subsumed the elements of control and knowledge to show possession. Thus, *Barber* held that the district court's failure to sua sponte instruct the jury on the definition of possession did not constitute fundamental error. *Id.* ¶ 32.

*Barber* is controlling in the present case. As an initial matter, it can hardly be disputed that, had Defendant asked, she would have been entitled to a jury instruction defining possession. *See generally State v. Brown*, 1996-NMSC-073, ¶ 34, 122 N.M. 724, 931 P.2d 69 ("When evidence at trial supports the giving of an instruction on a defendant's theory of the case, failure to so instruct is reversible error."). In this regard, Defendant denied having any knowledge of the black bag containing the drugs and paraphernalia, even though it was found in her bedroom closet. The State, conversely, presented evidence through Agent Riley's testimony where Defendant admitted that the bedroom and black bag belonged to her. In light of these divergent views, possession was at issue and Defendant would have been entitled to the definitional jury instruction for possession had she requested it. *See Barber*, 2004-NMSC-019, ¶ 12 (concluding that when the vital issue was whether the defendant possessed the drugs or was simply in proximity to them, an instruction defining the

8

difference between possession and mere proximity would have been merited if requested); *see also* Use Note 4 to UJI 14-3104 NMRA (stating that the UJI definition of possession "should be given if possession is in issue").

Having determined that it would have been error not to define possession for the jury if requested, we examine next whether a reasonable juror would have been confused or misdirected by the submitted jury instructions. Because the drugs were not found in Defendant's actual possession, the State relied on a theory of constructive possession to show that Defendant had knowledge of the drugs and exercised control over them. *See Barber*, 2004-NMSC-019, ¶ 22 (providing that "[w]hen actual physical control cannot be directly proven, constructive possession is a legal fiction used to expand possession and include those cases where the inference that there has been possession at one time is exceedingly strong" (internal quotation marks and citation omitted)); *State v. Phillips*, 2000-NMCA-028, ¶ 8, 128 N.M. 777, 999 P.2d 421 (providing that constructive possession exists when a defendant has knowledge of drugs and exercises control over the drugs). As did the defendant in *Barber*, Defendant argues that the jury may have equated proximity with possession, and that an instruction was needed to inform the jury not to do so. Under these circumstances, as in *Barber*, we conclude that the potential for juror confusion was present. *See* 2004-NMSC-019, ¶ 22 (recognizing that "[t]he word possession . . . remains one of

9

the most elusive and ambiguous of legal constructs" and that the potential for juror confusion exists (internal quotation marks and citation omitted)).

While we recognize the potential for juror confusion, we nonetheless conclude that there is no reasonable likelihood that the jury was actually confused and convicted Defendant without finding that she had knowledge and control over the drugs. We note first that as in *Barber*, apart from Defendant's proximity to the drugs, other circumstantial evidence linked Defendant to the drugs. *See, e.g.*, *State v. Becerra*, 112 N.M. 604, 607, 817 P.2d 1246, 1249 (Ct. App. 1991) (providing that the defendant's conduct and actions, as well as circumstantial evidence, may sufficiently prove constructive possession); *State v. Brietag*, 108 N.M. 368, 370, 772 P.2d 898, 900 (Ct. App. 1989) ("Where a defendant is not in exclusive possession of the premises on which drugs are found, an inference of constructive possession cannot be drawn *unless there are incriminating statements or circumstances tending to support the inference*." (emphasis added.))

Specifically, we consider Agent Riley's testimony that, during the search, Defendant was present and admitted that the bedroom was hers. *See, e.g.*, *id.* at 370, 772 P.2d at 900 (stating that "evidence indicating sole occupancy of a bedroom supports a logical inference of control and knowledge of the room's contents by the usual occupier" (emphasis, internal quotation marks, and citation omitted)); *cf. State*

10

*v. Maes*, 2007-NMCA-089, ¶ 19, 142 N.M. 276, 164 P.3d 975 (rejecting the State's theory of constructive possession when, among other factors, the officers found women's clothing in the bedroom but could not say it was the defendant's clothing). We further consider Agent Riley's testimony that Defendant told him that the black bag in the bedroom closet containing the drugs and paraphernalia also belonged to her. While Defendant did not directly admit to owning the drugs, according to Agent Riley, she did admit to owning the bag in which the drugs were found, and from this the jury could have reasonably inferred that Defendant knew of and had control over the black bag and its contents. *See, e.g.*, *State v. Muniz*, 110 N.M. 799, 800-02, 800 P.2d 734, 735-37 (Ct. App. 1990) (finding that the defendant's statements provided sufficient inference of constructive possession); *see also Brietag*, 108 N.M. at 370, 772 P.2d at 900 (recognizing that "[w]here drugs are found on premises that a defendant does not exclusively possess, the fact that they are found in close proximity to his personal belongings may be a circumstance sufficient to link him with the possession of those drugs").

Also relevant to both Defendant's knowledge of the drugs and control over the drugs, we consider Agent Riley's testimony that Defendant admitted to him that she had placed credit cards belonging to another person in the black bag. Without control over the bag and its contents, Defendant would not have been in a position to place

the credit cards in the bag. We lastly consider the evidence that surveillance equipment was found in Defendant's bedroom that showed the exterior of the house. This evidence could have suggested to the jury that Defendant had knowledge of the illegal items and was taking action to ensure that they were not discovered by any third parties that could potentially enter the house.

Given the evidence linking Defendant to the seized drugs and paraphernalia, we are satisfied that there is no reasonable likelihood that the jury was confused and convicted Defendant based on her proximity alone to the items.

Further, in evaluating the circumstances of the case, we consider also that the submitted instructions did not preclude Defendant from presenting her defense to the jury that her proximity to the drugs alone did not show that the drugs were hers. As Defendant acknowledges, she pursued this defense through her own testimony, cross-examination of the witnesses, and in closing argument. *See State v. Sandoval*, 2011-NMSC-022, ¶ 29, 150 N.M. 224, 258 P.3d 1016 (among other circumstances of the case, considering that the omissions from the jury instruction did not preclude the defendant from presenting his multiple assailant claim to the jury and concluding that the defendant's conviction was not a plain miscarriage of justice).

Lastly, even if we assume for the sake of argument that the jury instructions were defectively ambiguous without the definition of possession, we would

nonetheless conclude that the jury instructions as a whole cured any ambiguity. *See Barber*, 2004-NMSC-019, ¶ 29 (evaluating whether the jury instructions as a whole cured the ambiguity and recognizing that error is not fundamental when the jury could not have reached its verdict without also finding the element omitted from the instructions). Here, Defendant was convicted not only for possessing cocaine, but also for trafficking methamphetamine, thereby requiring the jury to find that Defendant intended to transfer methamphetamine in her possession to another. As *Barber* under similar circumstances concluded, "the jury could not have found that [the d]efendant intended to transfer the methamphetamine . . . without also finding that [the d]efendant was exercising some degree of control over the drugs." *Id.* ¶ 30. And because the cocaine was found in the same bag as the methamphetamine, the underlying reasonable inference of knowledge and control over the methamphetamine also  extends to the cocaine.

Based on the foregoing discussion, we hold that the absence of the definition of possession from the jury instructions does not leave Defendant's conviction "open to such question that it would shock the conscience to permit the conviction to stand." *Id.* ¶ 14 (internal quotation marks and citation omitted). We conclude that the jury instructions did not undermine the reliability of the verdict and the integrity of our judicial system, and therefore hold that no fundamental error occurred.

13

**Ineffective Assistance of Counsel**

Defendant argues that she was denied effective assistance of counsel when her trial counsel failed to tender a jury instruction defining possession. To establish a claim of ineffective assistance of counsel, the defendant must show (1) that counsel's performance fell below that of a reasonably competent attorney, and (2) that the defendant was prejudiced by the deficient performance. *State v. Hester*, 1999-NMSC-020, ¶ 9, 127 N.M. 218, 979 P.2d 729.

As previously discussed, at trial, Defendant relied on a defense that her proximity to the drugs, by itself, was not enough to show that she possessed the drugs. Consistent with this, defense counsel emphasized that the drugs were not found on her person and that numerous drug users who had access to the black bag were also in the house. Defense counsel advocated this defense to the jury through Defendant's own testimony, by the examination of witnesses, and during closing argument. Because Defendant's theory of the case was before the jury, we reject her ineffective assistance claim based on a lack of prejudice. *See State v. Barber*, 2003-NMCA-053, ¶ 12, 133 N.M. 540, 65 P.3d 1095 (concluding that the defendant was not prejudiced by trial counsel's failure to tender the definition of possession when the defendant's theory of the case was sufficiently before the jury giving the jury an understanding of the defense), *cert. granted and affirmed by Barber*, 2004-NMSC-019; *see also State v.*

14

*Plouse*, 2003-NMCA-048, ¶ 13, 133 N.M. 495, 64 P.3d 522 (recognizing that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed" (internal quotation marks and citation omitted)).

**Sufficient Evidence Supports Defendant's Convictions**

Defendant refers to *State v. Franklin*, 78 N.M. 127, 428 P.2d 982 (1967), and *State v. Boyer*, 103 N.M. 655, 712 P.2d 1 (Ct. App. 1985), to argue that the evidence was insufficient to support her convictions. We review the evidence to determine "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). Under this standard, "[w]e view the evidence in the light most favorable to supporting the verdict and resolve all conflicts and indulge all inferences in favor of upholding the verdict." *State v. Hernandez*, 115 N.M. 6, 26, 846 P.2d 312, 332 (1993). We do not re-weigh the evidence, nor do we substitute our judgment for that of the fact finder, so long as there is sufficient evidence to support the verdict. *Sutphin*, 107 N.M. at 131, 753 P.2d at 1319.

Defendant's challenge to her convictions for both possession of cocaine and for trafficking methamphetamine is premised on her position that she did not possess the

15

drugs at issue because she did not even know of their existence. As addressed in conjunction with the jury instruction issue, while mere proximity to the drugs was not enough to support an inference of constructive possession, the jury could infer possession when additional circumstances or incriminating statements link the accused to the drugs. *See Brietag*, 108 N.M. at 371, 772 P.2d at 901. For the reasons discussed in the jury instruction issue, such circumstances are present in this case.

While Defendant's defense was premised on a theory that the drugs belonged to others in the house, the jury was free to reject her version of the events. *See State v. Roybal*, 115 N.M. 27, 30, 846 P.2d 333, 336 (Ct. App. 1992) (leaving resolution of the conflicts in the testimony and the credibility of witnesses to the jury); *State v. Chandler*, 119 N.M. 727, 731, 895 P.2d 249, 253 (Ct. App. 1995) (providing that the jury is free to "use their common sense to look through testimony and draw inferences from all the surrounding circumstances" (internal quotation marks and citation omitted)). For example, we acknowledge Defendant's argument that the fact that the drugs were found in a bag containing credit cards in another person's name implies that someone other than Defendant possessed the drugs. However, the jury was free to instead rely on Agent Riley's testimony that Defendant told him she put the cards in the bag, as well as Agent Riley's testimony that Defendant had stolen credit cards and used them to make fraudulent purchases. The jury reasonably could have relied

16

on the foregoing evidence to conclude that Defendant—rather than the owner of the stolen cards—had placed the cards in the bag and thus had control over the bag and its contents. We lastly reject Defendant's reliance on the "evidence equally consistent with two inferences" tends to prove neither argument because, by its verdict, the jury necessarily found the hypothesis of guilt more reasonable than the hypothesis of innocence.

**The District Court's Imposition of a Ten-Year Sentence of Actual Imprisonment Did Not Constitute Cruel and Unusual Punishment**

Again citing *Franklin* and *Boyer*, Defendant argues that her sentence violates the prohibition against cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution and Article II, Section 13 of the New Mexico Constitution. Upon Defendant's conviction, the judge suspended Defendant's sentence and placed her on supervised probation. Defendant subsequently violated her probation because she failed to successfully complete her substance abuse treatment program. As a consequence, the district court revoked Defendant's probation and sentenced her to the full balance of her remaining sentence for a total sentence of ten years imprisonment. Defendant contends that this constituted cruel and unusual punishment because the "impetus for changing her sentence was merely a failure to complete one particular treatment program" and because the length of the imposed sentence was grossly disproportionate to the crimes.

17

As an initial matter, we agree with the State that Defendant waived this argument. At the sentencing hearing, defense counsel and the State both asked that Defendant receive a statutory sentence that was suspended on the condition that she successfully complete a rehabilitation program. If Defendant believed that imposition of the statutory sentence upon any probation revocation was unconstitutional, then she should have objected at the time of initial sentencing rather than waiting until her probation was subsequently revoked. *See generally State v. Herrera*, 2004-NMCA-015, ¶ 9, 135 N.M. 79, 84 P.3d 696 (recognizing that an untimely objection is tantamount to a waiver of the matter of the objection); *State v. Trujillo*, 2002-NMSC-005, ¶ 64, 131 N.M. 709, 42 P.3d 814 (stating that a constitutional claim of cruel and unusual punishment is a non-jurisdictional claim that must be preserved for appeal).

Moreover, apart from Defendant's failure to adequately preserve this issue, her sentence does not violate the prohibition against cruel and unusual punishment. As provided by law, once Defendant violated her probation, the district court had authority to re-sentence her and impose the balance of the statutory sentences on both counts. *See* NMSA 1978, § 66-8-102(T) (2010) (providing that "if an offender's sentence was suspended or deferred in whole or in part and the offender violates any condition of probation, the court *may impose any sentence that the court could have originally imposed* and credit shall not be given for time served by the offender on

18

probation" (emphasis added)).  Consistent with this authority, when Defendant violated her probation, the district court re-sentenced her to a total imprisonment term of ten years.  This sentence included the statutorily lawful terms of nine years for the trafficking conviction, *see* NMSA 1978, § 30-31-20 (2006), and eighteen months for the possession of a controlled substance conviction, *see* NMSA 1978, § 30-31-23(D) (2005) (amended 2011).  The sentences imposed were consistent with the district court's sentencing authority. *See* NMSA 1978, § 31-18-15 (2007).  Both terms were ordered to run concurrently and enhanced by one year pursuant to the habitual offender statute. *See* NMSA 1978, § 31-18-17 (2003).

In general, a lawful sentence does not constitute cruel and unusual punishment. *See State v. Augustus*, 97 N.M. 100, 101, 637 P.2d 50, 51 (Ct. App. 1981).  "It is the Legislature's province to set penalties for crimes and only in exceptional circumstances will the court invade this province." *State v. Rueda*, 1999-NMCA-033, ¶ 16, 126 N.M. 738, 975 P.2d 351.  In arguing such exceptional circumstances are present, Defendant attempts to minimize the impact of her probation violation, asserting that it was premised on small rule violations at the treatment program that were the result of "adjustment problems."  In such instance, Defendant argues, her probation violation was not a proper impetus for imposition of the full sentence upon re-sentencing. We disagree. In doing so, we need not revisit the strength of evidence

19

in support of Defendant's probation revocation, as Defendant was not sentenced for her probation violation, but instead for the underlying crimes. *See, e.g.*, *State v. Sanchez*, 2001-NMCA-060, ¶ 27, 130 N.M. 602, 28 P.3d 1143 (recognizing that merely requiring the defendant to serve the original sentence following revocation does not constitute cruel and unusual punishment where the original sentence was within statutory limits).

By initially suspending Defendant's sentence subject to supervised probation, the district court engaged in an act of clemency that was premised on an assumption that Defendant could be rehabilitated without serving the suspended sentence. *See State v. Lopez*, 2007-NMSC-011, ¶ 7, 141 N.M. 293, 154 P.3d 668 (recognizing that a suspended sentence and probation is a matter of favor that provides the defendant with an "opportunity to repent and reform") (internal quotation marks and citation omitted)), *called into doubt on other grounds by State v. Utley*, 2008-NMCA-080, ¶¶ 11-12, 144 N.M. 275, 186 P.3d 904. To facilitate Defendant's rehabilitation, her suspended sentence and probation was largely premised on her agreement to complete the treatment program. In light of her failure to do so and the district court's imposition of a lawful sentence, we cannot agree that Defendant's sentence was one of those exceptional cases that are so shocking or so unfair as to constitute cruel and unusual punishment. *Cf. In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 22, 121 N.M. 562,

915 P.2d 318 (stating the test for cruel and unusual punishment to be "[w]hether in view of contemporary standards of elemental decency, the punishment is of such disproportionate character to the offense as to shock the general conscience and violate principles of fundamental fairness" (internal quotation marks and citation omitted)).

**CONCLUSION**

For the reasons discussed, we hold that the district court's failure to sua sponte instruct the jury on the definition of possession did not constitute fundamental error. We further reject Defendant's claim of ineffective assistance of counsel, hold that substantial evidence supports Defendant's convictions, and hold that her sentence did not violate the prohibition against cruel and unusual punishment. We therefore affirm.

**IT IS SO ORDERED.**

_____

**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____

**RODERICK KENNEDY, Chief Judge**

21

_____

**J. MILES HANISEE, Judge**