Kathleen Ann **FRAYER**, Petitioner,

v.

The **PEOPLE** of the State of
Colorado, Respondent.

No. 83SC27.

Supreme Court of Colorado,
En Banc.

June 18, 1984.

David F. Vela, Colorado State Public Defender, Jody Sorenson Theis, Deputy Public Defender, Denver, for petitioner.

L. Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Virginia Byrnes, Asst. Atty. Gen., Denver, for respondent.

ROVIRA, Justice.

We granted certiorari to review the decision of the court of appeals in *People v. Frayer*, 661 P.2d 1189 (Colo.App.1982), affirming the convictions of Kathleen Ann Frayer, defendant, for tampering with physical evidence [1] and for obtaining a narcotic drug by fraud or deceit.[2] We affirm.

The court of appeals opinion, *id.* at 1190, contains a clear and succinct summary of

1.  § 18–8–610(1)(a), 8 C.R.S. (1978).

2.  § 12–22–319(1), 5 C.R.S. (1978).

the facts in this case. Frayer was arrested for "investigation of forged prescription" after she purchased a bottle of hycodan, a narcotic cough syrup, at a Fort Collins drug store. She struggled with police and twice threw the bottle toward a waiting automobile before it sped away. The bottle of hycodan broke as a result of Frayer's efforts to dispose of the cough syrup.

On appeal, Frayer argues that both of her convictions should be reversed. We first consider whether the evidence was sufficient to support her conviction for tampering with physical evidence. The elements of this offense are set out in section 18–8–610(1)(a), 8 C.R.S. (1978), which provides:

"(1) A person commits tampering with physical evidence if, believing that an official proceeding is pending or about to be instituted and acting without legal right or authority, he:

(a) Destroys, mutilates, conceals, removes, or alters physical evidence with intent to impair its verity or availability in the pending or prospective official proceeding ...."

A related statute, section 18–8–501(3), 8 C.R.S. (1978), defines "official proceeding" to mean "a proceeding heard before any legislative, judicial, administrative, or other government agency, or official authorized to hear evidence under oath ...."

Frayer contends that her arrest and the investigation surrounding her arrest do not constitute an "official proceeding" within the meaning of section 18–8–610(1)(a). She relies primarily on New York v. Traynham, 95 Misc.2d 145, 407 N.Y.S.2d 408 (1978), in which the defendant swallowed a

glassine envelope containing a white powder after being informed by the police that he was under arrest. The defendant was charged with tampering with physical evidence,[3] but the New York City Criminal Court dismissed the charge because, in its view, "inquiry, investigation or arrest by the police do not fall within the definition of 'official proceeding.'" Id., 407 N.Y.S.2d at 409. Frayer now argues for a result similar to Traynham in this case,[4] but her argument is flawed for two reasons. First, the precedential value of Traynham has been seriously undermined by New York v. Nicholas, 70 A.D.2d 804, 417 N.Y.S.2d 495 (1979). Second, for reasons that are not apparent, the court in Traynham wholly ignored the practical effect on the defendant's mental state of being placed under arrest. Given these considerations, we believe that the defendant's reliance on Traynham is misplaced.

In Nicholas, the New York Supreme Court (Appellate Division) analyzed that state's tampering statute differently than the lower court in Traynham. The defendant in Nicholas helped the perpetrator of a homicide hide the victim's body. He was charged with tampering with physical evidence under N.Y. Penal Law § 215.40 (McKinney 1975), which provides:

"A person is guilty of tampering with physical evidence when: ... 2. Believing that certain physical evidence is about to be produced or used in an official proceeding or a prospective official proceeding, and intending to prevent such production or use, he suppresses it by an act of concealment, alteration or destruction...."[5]

**3.** See N.Y.Penal Law § 215.40 (McKinney 1975) (quoted in text accompanying note 5).

**4.** Frayer also cites State v. Howe, 247 N.W.2d 647 (N.D.1976), and State v. Pella, 25 Wash.App. 795, 612 P.2d 8 (1980), for the proposition that an "official proceeding" begins, at the earliest, with the filing of a complaint. Both Howe and Pella dealt with the offense of tampering with a witness, however, and neither of the statutes at issue extended the offense to situations involving "prospective" official proceedings. Both courts therefore concluded that an official proceeding must be pending before a

defendant can be guilty of attempting "to influence another's testimony in an official proceeding." See N.D.Cent.Code § 12.1–09–01(1) (1976 Repl.Vol.); Wash.Rev.Code § 9A.72.110(1)(a) (1983).

**5.** N.Y.Penal Law § 215.35(2) (McKinney 1975) defines "official proceeding" to mean "any action or proceeding conducted by or before a legally constituted judicial, legislative, administrative or other governmental agency or official, in which evidence may properly be received."

Unlike the court in *Traynham*, the court in *Nicholas* emphasized the virtual certainty in the defendant's mind that an official proceeding would be instituted in connection with the body. It concluded: "While it is true that at the time defendant allegedly moved the body there was no official proceeding pending, a prospective official proceeding could readily be contemplated. The moving of the body prior to an official proceeding being begun constituted tampering with physical evidence." *Nicholas*, 70 A.D.2d at 805, 417 N.Y.S.2d at 496.

■ The court in *Nicholas* focused primarily on the defendant's conduct and intent, rather than on the point in time when the tampering occurred. As a result, it extended the reach of N.Y. Penal Law § 215.40 far beyond that contemplated in *Traynham*. We agree that the offense of tampering with physical evidence depends, to an important degree, on the defendant's conduct and intent. In this case, however, the fact that Frayer was arrested in possession of a narcotic drug makes it unnecessary for us to determine whether section 18–8–610(1)(a) is as far-reaching as the statutory interpretation in *Nicholas*.[6] The evidence, when viewed in a light most favorable to the prosecution, established that Frayer possessed the requisite belief that an official proceeding was "about to be instituted" when she threw and broke the bottle of hycodan. This physical evidence was not merely indirectly or circumstantially related to some crime arguably within Frayer's knowledge. On the contrary, her possession of the hycodan was itself a crime. A person arrested with such contra-band in her possession, as was Frayer, has every reason to believe that formal charges will be filed against her. Furthermore, Frayer's conduct at the time of her arrest evidenced an intent "to impair [the] verity or availability [of the hycodan] in the ... prospective official proceeding." We therefore affirm her conviction for tampering with physical evidence.

We next consider whether Frayer's conviction for obtaining a narcotic drug by fraud or deceit should be reversed. In 1980, when Frayer obtained the bottle of hycodan, the elements of this offense were set out in section 12–22–319(1), 5 C.R.S. (1978), which provided:

"No person shall obtain a narcotic drug, or procure the administration of a narcotic drug, by fraud, deceit, misrepresentation, or subterfuge; or by the forgery or alteration of a prescription or of any written order; or by the concealment of a material fact; or by the use of a false name or the giving of a false address."[7]

A related statute, section 12–22–301(16), 5 C.R.S. (1978), defined "narcotic drug" to mean

"coca leaves, opium, and any compound, manufacture, salt derivative, mixture, or preparation of coca leaves and opium, including morphine, codeine, and heroin ...; opiates, whether occurring naturally or produced synthetically ...; any other drug except cannabis which by the federal 'Controlled Substances Act of 1970' may be deemed a narcotic drug; and any drug found by the state board of health ... to have an addiction-forming or ad-

6. In *People v. Board*, 656 P.2d 712 (Colo.App. 1982), the tampering occurred during a grand jury investigation but before the filing of an indictment. The court of appeals upheld the defendant's conviction under section 18–8–610. Other courts have gone much further and adopted interpretations similar to *Nicholas*. See, e.g., *State v. Arellano*, 91 N.M. 195, 572 P.2d 223 (1977) (tampering with physical evidence occurred when the defendant discarded the gun used in a shooting; circumstances were consistent with the statutory emphasis on the defendant's conduct and intent; applicability of the statute does not depend upon whether a crime occurred or upon the knowledge or belief of the police); *State v. Diana*, 48 Ohio St.2d 199, 357 N.E.2d 1090 (1976), *cert. denied*, 431 U.S. 917, 97 S.Ct. 2180, 53 L.Ed.2d 227 (1977) (tampering with physical evidence occurred when the defendants flushed gambling proceeds down a toilet as the police, with a search warrant, entered the premises; under the circumstances, the defendants knew that "an official proceeding or investigation was in progress or about to be or likely to be instituted").

7. This statute was repealed and reenacted in 1981. See § 12–22–315, 5 C.R.S. (1983 Supp.).

diction-sustaining liability similar to morphine or cocaine."

Frayer contends that the trial court erred by instructing the jury that "hydrocodone," a derivative of codeine and the key ingredient of hycodan cough syrup, is a narcotic drug. She points out that, while the trial court basically adhered to the language of section 12–22–301(16) in its instruction, it also added a sentence—"Hydrocodone is a narcotic drug"—at the end of the instruction. As a result, Frayer argues, the trial court "invaded the fact finding province of the jury" by removing from its consideration the "essential question" of whether hycodan is a narcotic drug.

■ The court of appeals resolved this issue on the grounds that, at trial, several doctors and pharmacists "testified, without contradiction, that hycodan is a narcotic drug. Thus, the trial court did not err in so instructing the jury." *Frayer,* 661 P.2d at 1191.[8] We have adopted this approach in the past, *see People v. Hawkins,* 192 Colo. 535, 560 P.2d 833 (1977) (instruction only assumed uncontroverted facts and was not prejudicial), but in this case we prefer a different line of analysis. The General Assembly in section 12–22–301(16) classified a variety of substances as narcotic drugs, either by name or by incorporation from the federal Controlled Substances Act of 1970.[9] *See* Pub.L. No. 91–513, 84 Stat. 1236 (1970). The federal act established five schedules of controlled substances, *see* 21 U.S.C. § 812(c) (1982), and required that the schedules be updated on a regular basis. *See* 21 U.S.C. § 812(a) (1982). In 1974, "hydrocodone" was specifically added

to the list of schedule II controlled substances as an opium derivative. *See* 21 C.F.R. § 1308.12 (1983). By incorporation, therefore, "hydrocodone" was added to the list of narcotic drugs in section 12–22–301(16).[10]

■ We are satisfied that the trial court did not invade the fact finding province of the jury when it stated that "[h]ydrocodone is a narcotic drug." That determination had already been made by the General Assembly, and, as a result, the prosecution was relieved of proving that fact beyond a reasonable doubt.[11] It was still the prosecution's burden to prove, and the jury's responsibility to decide, that hycodan (containing hydrocodone) was the substance purchased by Frayer. *See People v. Parent,* 190 Colo. 76, 543 P.2d 1241 (1975); *People v. Saghy,* 190 Colo. 79, 543 P.2d 1243 (1975). We find no error in the trial court's instruction.

The judgment of the court of appeals is affirmed.

---

**8.** Defense counsel admitted in closing argument that the cough syrup contained a narcotic drug:

"There are certain issues that I told you on opening statement that were not going to be questioned. Kathleen Ann Frayer was at the pharmacy that night. She did go to pick up a prescription .... She did throw the bottle. The bottle was broken. There is no issue of the fact that ... the bottle contained a cough syrup with codeine in it, a narcotic drug. Those aren't in issue."

**9.** There can be little doubt that the legislature may incorporate federal statutory provisions in state statutes by appropriate reference. *People*

*v. Harper,* 193 Colo. 116, 562 P.2d 1112 (1977); *Apple v. City & County of Denver,* 154 Colo. 166, 390 P.2d 91 (1964).

**10.** Hydrocodone is now specifically listed as a schedule II controlled substance in section 12–22–310(1)(a)(I)(J), 5 C.R.S. (1983 Supp.).

**11.** This statement presumes that the classification of hydrocodone as a narcotic drug is rationally based and thus constitutional. *See People v. Parent,* 190 Colo. 76, 543 P.2d 1241 (1975); *People v. McKenzie,* 169 Colo. 521, 458 P.2d 232 (1969); *People v. Stark,* 157 Colo. 59, 400 P.2d 923 (1965).