This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37417**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**FRANCISCO JAVIER GRANADOS,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Steven Blankinship, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Charles J. Gutierrez, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kimberly Chavez Cook, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**ZAMORA, Judge.**

**{1}** Defendant Francisco Granados appeals his convictions for trafficking a controlled substance (possession with the intent to distribute), contrary to NMSA 1978, Section 30-31-20(3) (2006), and tampering with evidence, contrary to NMSA 1978 NMSA, Section 30-22-5 (2003). Defendant argues that (1) the district court erred in denying his motion to suppress; (2) the district court abused its discretion by permitting law enforcement officers to give improper lay opinion testimony; (3) the district court abused its discretion

by admitting evidence related to a prior conviction; and (4) there was insufficient evidence to support his conviction for tampering with evidence. We affirm.

**BACKGROUND**

**{2}** In April 2013, Agent Rodney Scharmack of the Otero County Narcotics Enforcement Unit (NEU) received a tip from a confidential informant (CI) that Defendant was in possession of, and distributing, a large amount of cocaine. The CI identified Defendant and described two vehicles belonging to Defendant—a black Chrysler 300 sedan and a black pickup truck. Less than seventy-two hours after receiving the CI's tip, Agent Scharmack and three other NEU agents were patrolling the streets in plain-clothes attire and in an unmarked vehicle when they observed Defendant driving a black pickup truck matching the CI's description. Two of the agents, Scharmack and Commander Neal LaSalle, were familiar with Defendant and his truck; they had personally interacted with Defendant, who had been the subject of previous criminal investigations and surveillance and "was on [their] radar for trafficking drugs."

**{3}** The agents followed Defendant in their unmarked vehicle and witnessed Defendant drive his truck into a parking lot at a local Alamogordo gas station. A female driving a white truck pulled up immediately next to, or behind Defendant, exited her vehicle, walked to Defendant's driver's side window, and engaged in conversation with Defendant. Agent Timothy Huffman testified what he saw was "almost like an exchange," although none of the agents claimed to have actually witnessed anything change hands between Defendant and the woman. Based on the agents' training and experience, they believed that a narcotics transaction was about to occur. The agents exited their vehicle, approached Defendant, displayed their badges, announced they were law enforcement, and ordered Defendant to exit the black pickup truck. Defendant disregarded the agents' commands and fled from the gas station in his truck. The agents followed Defendant, and while Defendant was driving, Agent Huffman observed Defendant throw a white object out of the driver's side window. Defendant turned into a residential area, exited his truck, and was ultimately detained by the agents. The agents returned to the location where Agent Huffman saw Defendant throw the object out of his window, and recovered a plastic bag filled with a white substance later determined to be 49.97 grams of cocaine. Defendant was arrested and charged with trafficking a controlled substance and tampering with evidence.

**{4}** Prior to trial, Defendant filed a motion to suppress, asserting that the agents' actions violated Defendant's rights under the Fourth Amendment to the United States Constitution and Article II, Section 10, of the New Mexico Constitution.

**{5}** At trial, the State relied upon the agents' testimony to establish that Defendant was guilty of trafficking cocaine. The agents testified, based upon their training and experience, that the quantity of cocaine in Defendant's possession was consistent with drug trafficking. Defense counsel did not object to the agents' testimony. The jury ultimately convicted Defendant of trafficking a controlled substance and tampering with evidence. Defendant appeals.

**DISCUSSION**

**I.       The District Court Did Not Err in Denying Defendant's Motion to Suppress**

**{6}**      The standard of review for suppression rulings is "whether the law was correctly applied to the facts, viewing them in a manner most favorable to the prevailing party[.]" *State v. Werner*, 1994-NMSC-025, ¶ 10, 117 N.M. 315, 871 P.2d 971 (internal quotation marks and citation omitted). When reviewing a district court's denial of a motion to suppress, "appellate courts draw all reasonable inferences in favor of the district court's ruling, and defer to the district court's findings of fact, so long as they are supported by substantial evidence." *State v. Murry*, 2014-NMCA-021, ¶ 10, 318 P.3d 180.

**{7}**      On appeal, Defendant argues that the district court erred in finding that the agents had reasonable suspicion to detain Defendant when they approached him at the gas station.[1,2] Defendant mounts two separate attacks in furtherance of this argument. First, Defendant claims that the CI's tip was inadequate to supply reasonable suspicion, and second, Defendant asserts that the events witnessed by the agents at the gas station did not provide an individualized, specific, and articulable suspicion that Defendant was involved in criminal activity. While we address each argument in turn, we note that we consider the totality of the circumstances when determining whether reasonable suspicion exists. *See State v. Leyva*, 2011-NMSC-009, ¶ 30, 149 N.M. 435, 250 P.3d 861. For this reason, separation of the CI's tip and the agents' observations into separate hurdles or benchmarks which must be met in succession is inappropriate. To lawfully seize a defendant, a law enforcement officer need only have "a particularized suspicion, *based on all the circumstances* that a particular individual, the one detained, is breaking, or has broken, the law." *State v. Hubble*, 2009-NMSC-014, ¶ 8, 146 N.M. 70, 206 P.3d 579 (emphases added) (internal quotation marks omitted). In this case, the totality of the circumstances forming the basis for the stop included: (1) the agents' knowledge that Defendant was a known drug trafficker; (2) a tip from a reliable CI; (3) the agents' verification of specific aspects of the tip's information; and (4) the agents' belief, based on substantial training and experience, that Defendant was engaged in criminal activity.

**{8}**      Defendant does not challenge the agents' knowledge that he was a known drug trafficker nor does he challenge the reliability of the CI's tip on appeal. Instead, Defendant contends the agents lacked reasonable suspicion because the CI's tip was

---

[1]On appeal, Defendant only alleges that the State violated his rights under the New Mexico Constitution. However, because "[w]e apply the same reasonable suspicion standard" when analyzing claims under both Fourth Amendment and Article II, Section 10 analyses" we need not distinguish between the two when analyzing Defendant's claim. *State v. Martinez*, 2020-NMSC-005, ¶ 18, 457 P.3d 254; *see id.* ("[W]e have never interpreted the New Mexico Constitution to require more than a reasonable suspicion that the law is being or has been broken to conduct a temporary, investigatory traffic stop.") (alteration, internal quotation marks, and citation omitted).

[2]Defendant also contends that the district court erred by failing to find Defendant was seized at the gas station because the district court misapprehended the law. We need not address this argument because we hold the agents had reasonable suspicion sufficient to detain Defendant during the initial encounter at the gas station, and this holding is dispositive.

"stale," and "failed to specify a particular vehicle in which cocaine would be found." Defendant's argument that the CI's tip "failed to specify a particular vehicle in which cocaine would be found" is unavailing. In *State v. Robbs*, we concluded that a tip was "reliable and complete" because the identity of the CI was known to officers and "significant aspects" of the CI's tip were corroborated prior to the officer's stop. 2006-NMCA-061, ¶ 3, 19, 139 N.M. 569, 136 P.3d 570. Similarly, here, the CI reported that Defendant was in possession of and distributing cocaine. The CI identified Defendant and described two vehicles belonging to Defendant—a black Chrysler 300 sedan and a black pickup truck. The agents then verified aspects of the CI's tip information when they observed Defendant driving a pickup truck matching the description provided by the CI. The fact that Defendant was known to drive another vehicle (which the CI also identified) is not significant.

**{9}** In support of his staleness argument, Defendant cites to several cases in which New Mexico courts have held that CI tips provided prior to issuance of a warrant, failed to support a finding that a defendant's alleged criminal activity was ongoing and continuous. *See State v. Whitley*, 1999-NMCA-155, ¶ 5, 128 N.M. 403, 993 P.2d 117 (concluding that a tip by a confidential informant failed to support probable cause where the tip was "at least forty-eight hours old at the time the warrant was issued"); *State v. Lovato*, 1994-NMCA-042, ¶ 10, 118 N.M. 155, 879 P.2d 787 (holding that a confidential informant's controlled buy, seventy-two hours prior to issuance of a warrant, failed to support a conclusion that criminal activity was of an ongoing, continuous nature). These cases address the requirements for finding the existence of probable cause, not reasonable suspicion, and accordingly, do not control our analysis. As our Supreme Court noted, " '[r]easonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.' " *State v. Yazzie*, 2016-NMSC-026, ¶ 18, 376 P.3d 858 (quoting *Alabama v. White*, 496 U.S. 325, 330 (1990)). We conclude that the CI's tip supplied information which led to the agents' eventual development of reasonable suspicion to detain Defendant given the totality of the circumstances.

**{10}** We turn now to consider the events at the gas station which led agents to confront Defendant. Three days after receiving the CI's tip, the agents verified aspects of the CI's tip when they observed Defendant driving a truck matching the CI's description at the parking lot of a gas station. Defendant did not formally park into a parking spot, but "pulled in facing, as if he was going to pull out again" and then, "a white pickup truck pull[ed] in right behind him." Agent Obed Marte recognized the white pickup truck as belonging to "a previous narcotics investigation target [Anthony Montoya]." A woman then exited the white truck, and "engaged in conversation" with Defendant. Agent Huffman testified what he saw was "almost like an exchange," and the agents' education and experience led them to believe that a "drug deal" was about to occur. Accordingly, the agents exited their vehicle, approached Defendant, displayed

their badges, announced that they were law enforcement, and ordered Defendant to exit his vehicle.

**{11}** Defendant asserts that the events witnessed by the agents at the gas station did not provide an individualized, specific, and articulable suspicion that Defendant was involved in criminal activity because the conversation agents observed was between Defendant and his mother, because the agents did not witness an actual exchange, and because the agents did not specifically explain how their training and experience led them to believe a drug transaction was about to occur. Given the totality of the circumstances, we disagree.

**{12}** Although it was later determined that the individual in the white truck was Defendant's mother, and not the narcotics investigation target Anthony Montoya, "[t]he possibility of an innocent explanation does not deprive the officer of the capacity to entertain a reasonable suspicion of criminal conduct." *Martinez*, 2020-NMSC-005, ¶ 31 (internal quotation marks and citation omitted). "In determining whether reasonable suspicion exists in a particular case, 'the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." *State v. Urioste*, 2002-NMSC-023, ¶ 10, 132 N.M. 592, 52 P.3d 964. Similarly, the fact that agents did not actually witness an exchange is not dispositive. In *Martinez*, our Supreme Court determined reasonable suspicion existed based solely upon the following facts: the law enforcement officer (1) knew the gas station where Defendant was seized was a location at which he knew drugs were purchased with frequency; and (2) observed two separate times, an individual entering the back seat of a car and remaining in the car for only a few minutes, but did not see an exchange. 2020-NMSC-005, ¶¶ 3-4. In this case by contrast, the agents' reasonable suspicion was based not only upon (1) the agents' belief, based on substantial training and experience, that Defendant was engaged in criminal activity, but also upon; (2) a tip from a reliable CI; (3) the agents' verification of specific aspects of the tip's information; and (4) their knowledge that Defendant was a known drug trafficker.

**{13}** It is true that "[w]hen an officer relies upon training and experience to effectuate a stop, it is necessary that the officer explain why their knowledge of particular criminal practices gives special significance to the apparently innocent facts observed." *Id.* ¶ 22 (internal quotation marks and citation omitted). In this case, it was established that the agents had extensive experience identifying drug transactions. Agent Scharmack was a senior narcotics agent at NEU, with nearly eight years of experience in law enforcement, and in this capacity, he "develop[ed] cases, informants, and work[ed] leads" involving narcotics investigations. He had occasion to speak with self-admitted traffickers and drug users on a daily basis. During the course of his tenure, Agent Scharmack worked undercover operations, purchased drugs, and executed search warrants involving narcotics. Agent Marte, an agent with NEU, "strictly worked narcotics investigations" where he participated in undercover operations involving cocaine possession and trafficking. Commander LaSalle had been a law enforcement officer for thirteen years, had substantial experience communicating with drug users and traffickers, supervised the "daily functions" of the NEU, worked "hand-in-hand" with

agents, and participated in narcotics investigations. Defendant takes issue with the lack of elaboration in the record with respect to how the agents' knowledge and training led them to believe a drug transaction was occurring or about to occur. However, we note that defense counsel failed to challenge or object to the agents' qualifications or to the conclusions drawn therefrom, and "[t]he view of the facts that controls here is that which is most favorable to the decision reached by the district court." *Id.* ¶ 27. "Moreover, courts must defer to the training and experience of the officer when determining whether particularized and objective indicia of criminal activity existed." *Id.* We conclude that the agents' education and training as applied to their observations supported their reasonable suspicion.

**{14}** We reiterate that "[q]uestions of reasonable suspicion are reviewed de novo by looking at *the totality of the circumstances* to determine whether the detention was justified." *Robbs*, 2006-NMCA-061, ¶ 9 (emphases added). The question is whether "the facts available to the officer warrant the officer, as a person of reasonable caution, to believe the action taken was appropriate[.]" *State v. Madsen*, 2000-NMCA-050, ¶ 9, 129 N.M. 251, 5 P.3d 573 (internal quotation marks and citation omitted). "Police officers must be permitted to act before their reasonable belief is verified by escape or fruition of the harm it was their duty to prevent." *Martinez*, 2020-NMSC-005, ¶ 30 (alteration, internal quotation marks, and citation omitted). In considering the totality of the circumstances, we hold that the agents had reasonable suspicion to detain Defendant.[3]

## II.     The District Court Did Not Abuse its Discretion in Admitting the Agents' Testimony Regarding Whether the Quantity of Drugs Possessed Was Consistent With Trafficking

**{15}** Defendant argues that the district court abused its discretion by permitting law enforcement officers to provide lay opinion testimony that the quantity of drugs in Defendant's possession was consistent with trafficking rather than personal use. Specifically, Defendant states it was "plain and indisputable that [the agents'] opinions on these topics were improperly admitted, as they clearly do not constitute lay opinions admissible under Rule 11-701 [NMRA]." Defendant concedes, however, that "defense counsel did not clearly object to a lack of expert qualification or insist upon expert qualification to render an opinion." Accordingly, we review Defendant's claim for plain error.

**{16}** We review "unpreserved evidentiary questions for plain error." *State v. Miera*, 2018-NMCA-020, ¶ 13, 413 P.3d 491. To be entitled to relief under the plain error doctrine, Defendant must show (1) there was an error; (2) the error was plain or clear; and (3) the error affected Defendant's substantial rights. *State v. Gwynne*, 2018-NMCA-033, ¶¶ 27, 417 P.3d 1157. We "examine the alleged error in the context of the testimony as a whole." *State v. Barraza*, 1990-NMCA-026, ¶ 18, 110 N.M. 45, 791 P.2d

---

[3]While the dissent correctly notes that Agent Scharmack testified that further information was needed in order to obtain a search warrant for Defendant's residence, Dissent Op. fn. 6. Agent Scharmack specifically stated "we had enough for [a warrant of Defendant's] person and his vehicles but did not have enough for his residence."

799. We apply the plain error rule "only if we have grave doubts about the validity of the verdict, due to an error that infects the fairness or integrity of the judicial proceeding." *State v. Dylan J.*, 2009-NMCA-027, ¶ 15, 145 N.M. 719, 204 P.3d 44 (internal quotation marks and citation omitted); *see also State v. Paiz*, 1999-NMCA-104, ¶ 28, 127 N.M. 776, 987 P.2d 1163 (noting that the plain error doctrine is applied sparingly as it is an exception to the general rule that a party must raise a timely objection).

**{17}** We need not decide whether the district court erred in admitting the agents' lay opinion testimony. Assuming arguendo that the admission was erroneous, it was not plain or clear as required for plain error reversal because the testimony was admissible as expert testimony under Rule 11-702 NMRA. Pursuant to Rule 11-702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form on an opinion or otherwise if the expert's . . . technical, or other specialized knowledge will help the trier of fact[.]" Under the provisions of Rule 11-702, a law enforcement officer must establish that he or she has sufficient foundational knowledge to opine on matters requiring technical or otherwise specialized expertise. *See State v. Rael-Gallegos*, 2013-NMCA-092, ¶ 25, 308 P.3d 1016 (holding that a district court did not abuse its discretion when it qualified a law enforcement officer as an expert in differentiating between "possession amounts and trafficking amounts of crack cocaine" because evidence was adduced regarding his experience in such matters).

**{18}** In this case, the State presented evidence that the agents had sufficient training and specialized knowledge in the field of narcotics investigations to opine regarding the quantity of cocaine being consistent with trafficking. Agent Scharmack testified that he had worked undercover operations, purchased drugs, and gathered evidence leading to search warrants. He had specific familiarity with cocaine and crack cocaine through his participation in investigations regarding those substances. While he had not ever personally purchased cocaine, he had worked with confidential informants conducting controlled buys. Agent Marte testified that he worked "strictly narcotics investigations," had participated in undercover operations and investigations involving cocaine possession and trafficking, had spoken with known users of cocaine, and had purchased drugs. Through his work, Agent Marte became familiar with the cost of narcotics throughout the Alamogordo community. Finally, Commander LaSalle testified that he had been involved in narcotics investigations and had experience communicating with drug users and traffickers, and discerning between "dealers" and "users." Through his experience on the job, he learned about the various costs, quantities and prices associated with different drugs, including cocaine. We conclude the agents possessed the requisite knowledge to render an opinion on the quantity of cocaine consistent with trafficking under Rule 11-702.

**{19}** Defendant's primary assertion, however, is that "a witness must qualify as an expert in the field for which his or her testimony is offered *before* such testimony is admissible." *Parkhill v. Alderman-Cave Milling & Grain Co. of N.M.*, 2010-NMCA-110, ¶ 28, 149 N.M. 140, 245 P.3d 585 (internal quotation marks and citation omitted) (emphasis added). Defendant cites to a number of cases in which New Mexico courts

required a proffered expert to set forth appropriate qualifications before opining on matters involving scientific, technical, or other specialized knowledge. *See, e.g., id.* (declaring an expert's testimony inadmissible where he lacked the requisite scientific knowledge to render an opinion). However, we are not aware of any cases in which an appellate court, applying a plain error standard of review, has concluded testimony of a witness was inadmissible solely because the witness was never affirmatively qualified as an expert by the district court. While we acknowledge that a district court "must exercise its gate-keeping function [to] ensure that [an] expert's testimony is reliable," *State v. Torrez*, 2009-NMSC-029, ¶ 21, 146 N.M. 331, 210 P.3d 228, in this case, reliability is not an issue. Although the agents were never tendered as experts, the agents possessed the requisite knowledge and training required by Rule 11-702 to provide expert testimony. *See Rael-Gallegos*, 2013-NMCA-092, ¶ 30 ("[A]n officer may testify as an expert and offer his or her opinion at to a trafficking amount versus personal use amount of narcotics."). In the absence of an objection alerting the district court that it needed to determine whether the agents were qualified and given our conclusion that the agents had sufficient foundational knowledge to qualify as experts, we do not believe the alleged error to be plain or clear. *See Gwynne*, 2018-NMCA-033, ¶ 27. Having concluded that the error was not plain or clear, we need not address the third factor of plain error review, whether the error affected Defendant's "substantial rights."

### III.    The District Court Did Not Abuse its Discretion in Allowing the State to Introduce Facts Underlying Defendant's Prior Conviction Under Rule 11-404(B) NMRA

**{20}**    Defendant argues that the district court abused its discretion when it allowed the State "to establish the underlying facts of [Defendant's] prior convictions[.]" During trial, defense counsel argued that Defendant lacked the specific intent required for the charge of tampering with evidence because he did not recognize the agents were law enforcement officers during the initial encounter. Defendant claimed he "recognized the car" the agents were driving and because "the previous owner of the car was a person who [he] did not get along with," he fled to lead them away from his mother. On cross-examination, the State sought to attack Defendant's claim that he did not know the agents were law enforcement by questioning Defendant about a prior tampering conviction wherein Defendant threw cocaine out of a window following a chase by law enforcement. The district court allowed the State to inquire into the underlying facts of Defendant's prior conviction, admitting the underlying facts as substantive evidence under Rule 11-404(B)(2) as a prior bad act relevant to a purpose other than propensity to "show absence of mistake."

**{21}**    We review the district court's admission of evidence for an abuse of discretion. *State v. Otto*, 2007-NMSC-012, ¶ 9, 141 N.M. 443, 157 P.3d 8. An abuse of discretion occurs when a ruling "is clearly against the logic end effect of the facts and circumstances of the case." *State v. Woodward*, 1995-NMSC-074, ¶ 6, 121 N.M. 1, 908 P.2d 231 (internal quotation marks and citation omitted), *abrogated on other grounds as recognized by State v. Montoya*, 2014-NMSC-032, 333 P.3d 935. Rule 11-404(B)(1)

states that evidence of a person's prior acts is "not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, such evidence "may be admissible for another purpose, such as . . . absence of mistake, or lack of accident." Rule 11-404(B)(2).

**{22}** Defendant contends that his previous act of throwing evidence out a vehicle window while pursued by *marked* police units, was not probative of his knowledge and that he was being followed by law enforcement officers in this case because the agents were dressed in plain clothes and driving an unmarked vehicle. We disagree. Setting aside this factual difference, significant similarities remain between the prior conviction and the facts of this case. Defendant had previously been pursued by law enforcement officers and that prior experience supports an inference that Defendant was aware that the persons pursuing him in this case were law enforcement officers. Given the similarities between Defendant's previous tampering with evidence conviction and the deference we afford to the district court's evidentiary rulings, we cannot say that permitting the State to examine Defendant regarding the prior conviction was "clearly against the logic and effects of the current case." *Woodward*, 1995-NMSC-074, ¶ 6 (internal quotation marks and citation omitted). We hold that the district court did not abuse its discretion in admitting evidence of Defendant's prior conviction for tampering with evidence.

## IV. Sufficient Evidence Supports Defendants' Conviction for Tampering With Evidence

**{23}** Finally, Defendant argues the State failed to produce sufficient evidence to support his conviction of tampering with evidence. When reviewing a claim of insufficient evidence, we determine "whether substantial evidence of either a direct or circumstantial nature exits to support a verdict of guilt beyond a reasonable doubt[.]" *State v. Cabezuela*, 2015-NMSC-016, ¶ 14, 350 P.3d 1145 (internal quotation marks and citation omitted). We view the evidence in the light most favorable to the State and ask whether any rational juror "could have found the essential elements of a crime beyond a reasonable doubt." *State v. Chavez*, 2009-NMSC-035, ¶ 11, 146 N.M. 434, 211 P.3d 891 (internal quotation marks and citation omitted).

**{24}** To convict Defendant of tampering with evidence, the State had to prove that Defendant (1) "destroyed, hid, and/or placed cocaine"; and (2) "[b]y doing so, the defendant intended to prevent apprehension, prosecution, or conviction of himself." *See* UJI 14-2241 NMRA. "[I]n order for [the d]efendant's conviction on tampering with evidence to be upheld, there must be sufficient evidence from which the jury can infer: (1) the specific intent of the [d]efendant to disrupt the police investigation; and (2) that [the d]efendant actively destroyed or hid physical evidence." *State v. Duran*, 2006-NMSC-035, ¶ 14, 140 N.M. 94, 140 P.3d 515 (internal quotation marks omitted). With respect to intent, Defendant testified that he did not know the individuals driving behind him were law enforcement officers. However, the State presented evidence rebutting Defendant's claim. When the agents exited their vehicle, their badges were visible, they announced themselves as law enforcement officers, and they ordered Defendant to exit

his truck. In addition, Defendant testified he knew Commander LaSalle, and Commander LaSalle testified Defendant's "expression changed" when he saw the agents exit the vehicle. The State also introduced evidence that Defendant had previously thrown cocaine out of a window following a chase by law enforcement to rebut Defendant's claim that he did not know he was being followed by law enforcement. "Conflicts in evidence are to be resolved by [the] fact[-]finder and this includes conflicts in the testimony of a witness." *State v. Landlee*, 1973-NMCA-112, ¶ 3, 85 N.M. 449, 513 P.2d 186. Based on this evidence, a rational juror could have concluded that Defendant knew he was being followed by law enforcement and had the specific intent "to disrupt the police investigation" when he threw the cocaine out of the window of his truck. *Duran*, 2006-NMSC-035, ¶ 14; *see Chavez*, 2009-NMSC-035, ¶ 11 (noting that we view the evidence in the light most favorable to the state and need only ask whether a rational juror "could have found the essential elements of a crime beyond a reasonable doubt") (internal quotation marks and citation omitted).

**{25}** Defendant also argues that even if he had an intent to tamper when he threw cocaine out the window, the overt act was insufficient to constitute an act of tampering. Because Agent Huffman saw Defendant throw the bag out the window and it was recovered without incident, Defendant argues that at most, he committed *attempted* tampering with evidence—his attempt to hide the evidence did not prevent the use of the evidence against him. Defendant cites to a series of cases from other jurisdictions for the proposition that a conviction for tampering with evidence cannot be sustained unless a defendant's actions prevent recovery of the item. *See, e.g.*, *Anderson v. State*, 123 P.3d 1110, 1119 (Alaska Ct. App. 2005) (holding that tossing away evidence constitutes evidence tampering only when the evidence is destroyed or its recovery is made "substantially more difficult or impossible"); *State v. Hawkins*, 406 S.W.3d 121, 125, 133 (Tenn. 2013) (holding that tossing a shotgun over a short metal fence while running from police or the scene of the crime constitutes abandonment, not tampering with evidence); *People v. Parker*, 148 A.D.3d 1583, 1585 (N.Y. App. Div. 2017) (holding that where a defendant threw bags of cocaine on the floor "in plain sight of the officers," the evidence was legally insufficient to support tampering).

**{26}** We are unpersuaded by Defendant's argument. In *State v. Roybal*, we held that a defendant's act of dropping heroin on the ground directly in front of law enforcement officers did not support a conviction for tampering. 1992-NMCA-114, ¶ 29, 115 N.M. 27, 846 P.2d 333. We concluded that "while [the d]efendant might be said to have tried to conceal the evidence by dropping it to the ground, there is no evidence that he acted to 'place' the heroin in a particular location." *Id.* In contrast, in *Roybal*, this Court cited *People v. Frayer*, 661 P.2d 1189 (Colo. App.1982), *aff'd sub nom.* 684 P.2d 927 (Colo. 1984) as exemplifying "behavior that ordinarily underlies a successful conviction for tampering with evidence." *Roybal*, 1992-NMCA-114, ¶ 25. In *Frayer*, the defendant purchased a bottle of narcotic cough syrup using a forged prescription, and when law enforcement officers confronted her, she twice threw the bottle toward a waiting vehicle before it sped away. 684 P.2d at 929; *see Roybal*, 1992-NMCA-114, ¶ 25 (citing *Frayer*, 684 P.2d at 929) (noting that when officers confronted the defendant in *Frayer* and identified themselves, the defendant did not simply let the bottle fall from her hand but

took affirmative action to prevent the police officer from securing the evidence by throwing it away from his location and into a waiting car). We concluded that "such circumstances make it relatively easy to infer [the defendant's] intent to thwart the officer's investigation." *Id.* ¶ 26

**{27}** In this case, Defendant did not throw the bag of cocaine on the floor "in plain sight of the [agents.]" *Parker*, 148 A.D.3d at 1585; *see Roybal*, 1992-NMCA-114, ¶ 25 (citing *Frayer*, 684 P.2d at 929). Instead, when the agents confronted Defendant, displayed their badges, announced that they were law enforcement, and ordered Defendant to exit his truck, Defendant fled from the gas station parking lot. Defendant then turned onto another street, threw the cocaine out the window, continued to drive into a residential area, and then turned one more time before stopping. These evasive actions indicate that Defendant "placed" the cocaine in a location and in a manner designed to "prevent apprehension, prosecution, or conviction of himself." UJI 14-2241. Accordingly, we conclude that substantial evidence supported Defendant's conviction for tampering with evidence.

**CONCLUSION**

**{28}** We affirm.

**{29}** **IT IS SO ORDERED.**

**BRIANA H. ZAMORA, Judge**

**I CONCUR:**

**J. MILES HANISEE, Chief Judge**

**JENNIFER L. ATTREP, Judge (dissenting).**

**ATTREP, Judge (dissenting).**

**{30}** Because I do not agree that there was reasonable suspicion to stop Defendant at the gas station, I respectfully dissent from the majority opinion.[4]

---

4Because the majority does not address whether Defendant preserved his claim that he was seized under Article II, Section 10 of the New Mexico Constitution, I assume for purposes of my dissent that this claim was preserved and, resultantly, that the seizure occurred at the point in time when "a reasonable person would have believed that he was not free to leave." *State v. Garcia*, 2009-NMSC-046, ¶ 37, 147 N.M. 134, 217 P.3d 1032 (adopting, for purposes of a claim made under Article II, Section 10, the standard from *United States v. Mendenhall*, 446 U.S. 544, 554 (1980), that "a person has been 'seized' only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave" (omission, alteration, internal quotation marks, and citation omitted)). I further accept, as the parties seem to do, that a reasonable person would have believed he was not free to leave when the four law enforcement officers exited their vehicle at the gas station, prior to Defendant's flight—i.e., that Defendant was seized at this moment and that reasonable suspicion had

**{31}** At the time of Defendant's seizure, the information possessed by the agents to form their suspicion, as discussed by the majority, was Defendant's reputation as a drug trafficker, an informant tip, and the officers' brief observations of Defendant at the gas station. Majority Op. ¶¶ 7-8, 10-13. I focus on the latter two, as does the majority.[5] The tip came from a known informant who had assisted law enforcement in the past with warrants, arrests, and controlled buys. The informant told Agent Scharmack on April 29, 2013, that "[Defendant] was in possession of and distributing cocaine." The only additional details from the tip are that Defendant possessed "a large amount of cocaine" on that date; that the informant "[was] not able to get a physical address"; and that there were "two separate vehicles that [Defendant] travels in[,] . . . a black pickup truck and . . . a black . . . Chrysler 300 . . . sedan." The tip contained no information about, for instance, when Defendant was trafficking cocaine—e.g., on the day of the tip only; or over time, including on the day of the stop, three days later on May 2, 2013—or where Defendant was selling drugs—e.g., from his house, one of his vehicles, or someplace else.[6]

**{32}** "Reasonable suspicion depends on the reliability and content of the information possessed by the officers." *Robbs*, 2006-NMCA-061, ¶ 13. And in cases involving tips, our courts have looked, as the majority does, *see* Majority Op. ¶ 8, to the credibility of the informant, as well as the reliability of the information in the tip. *See Robbs*, 2006-NMCA-061, ¶¶ 13-14; *see also State v. Gonzales*, 1999-NMCA-027, ¶¶ 22-23, 126 N.M. 742, 975 P.2d 355 (applying the *Aguilar-Spinelli* factors—i.e., (1) the reliability of the information, and (2) the credibility of the informant—to assess whether an informant tip established reasonable suspicion).[7] In this case, the credibility of the informant is not at

_____

to exist at that time. *See Garcia*, 2009-NMSC-046, ¶ 43 ("Reasonable suspicion must exist at the inception of the seizure. The officer cannot rely on facts which arise as a result of the encounter." (internal quotation marks and citation omitted)); *State v. Harbison*, 2007-NMSC-016, ¶ 10, 141 N.M. 392, 156 P.3d 30 ("The point at which the seizure occurs is pivotal because it determines the point in time the police must have reasonable suspicion to conduct an investigatory stop."). Finally, given my disagreement with the majority on the suppression issue, I do not consider Defendant's remaining claims of error arising at his trial.

5While the majority notes the agents knew of Defendant's reputation as a drug trafficker, Majority Op. ¶¶ 7-8, 12, it is unclear how this information affected the agents' assessment of suspicion at the time of the stop or the significance of this information in the district court's or the majority's determination of reasonable suspicion.

6The State contends that the informant provided information that Defendant was possessing and trafficking cocaine out of one of the identified vehicles. The tip, however, did not include that information. Instead, the informant identified the vehicles Defendant drove because the informant could not obtain a physical address. Moreover, Agent Scharmack testified that further information was needed to corroborate Defendant's residence in order to obtain a search warrant of the residence, suggesting law enforcement understood that the drug trafficking was occurring, or at least the implements of drug trafficking would be found, at Defendant's residence. *See State v. Evans*, 2009-NMSC-027, ¶ 10, 146 N.M. 319, 210 P.3d 216 ("Probable cause to search a specific location exists when there are reasonable grounds to believe that a crime has been committed in that place, or that evidence of a crime will be found there.").

7Although the *Aguilar-Spinelli* two-prong test for evaluating whether information from an informant establishes probable cause has been abandoned by the United States Supreme Court in favor of a "totality-of-the-circumstances analysis," *Illinois v. Gates*, 462 U.S. 213, 233 (1983), it remains good law in New Mexico for purposes of state constitutional analysis in the probable cause context. *See State v. Cordova*, 1989-NMSC-083, ¶ 17, 109 N.M. 211, 784 P.2d 30. Importantly, the *Aguilar-Spinelli* factors are

issue—it was established at the suppression hearing that the tip came from a documented, reliable source, and Defendant does not dispute this fact. The reliability of the information in the tip is another matter.

**{33}** While in certain circumstances, the reliability of the information might be established by the tip itself—e.g., the tip includes the basis of the informant's knowledge, as where the informant states he or she purchased cocaine from the defendant—that is not the case here. *See, e.g.*, *Gonzales*, 1999-NMCA-027, ¶¶ 3, 24 (concluding that reasonable suspicion existed where "the informant possessed personal knowledge of unlawful activity"—i.e., the informant "reported having seen methamphetamine in the vehicle earlier in the day"—and was "not merely passing on a rumor"). In this case, it is unknown whether the informant's awareness of Defendant's cocaine possession and trafficking came from, for instance, first-hand observation or some unreliable third party. Under such a circumstance, our courts often have looked to whether details of the tip can be independently corroborated, so that reliance on the uncorroborated (and incriminating) portion of the tip is reasonable. *See, e.g.*, *Urioste*, 2002-NMSC-023, ¶¶ 9-16; *Robbs*, 2006-NMCA-061, ¶ 14. The majority, relying on *Robbs*, says such corroboration occurred in this case because the agents verified that Defendant drove one of the vehicles identified by the informant. Majority Op. ¶ 8. I cannot agree.

**{34}** This case is distinguishable from *Robbs*, where "the number and type of corroborated facts" were critical to finding the officers' reliance on the tip reasonable. *See* 2006-NMCA-061, ¶¶ 14-19. The tip in *Robbs* provided that the defendant would be delivering drugs to a specific address, in a specific vehicle. *Id.* ¶ 2. The same day of the tip, the officers checked the registration of that vehicle, went to the registered address, and found the vehicle there. *Id.* The officers then observed the vehicle travelling toward the address where, according to the informant, the drugs were to be delivered, before the officers initiated the stop less than three blocks from the address. *Id.* ¶ 3. In determining that these corroborated facts established reasonable suspicion, this Court observed that

> *an informant's ability to predict a person's future behavior demonstrates a special familiarity* with that individual's affairs. This familiarity is an indication that the informant has access to reliable information about a person's illegal activities. When significant aspects of the information are verified, an officer can reasonably believe in both the reliability of the information and the informant's veracity. Thus, *the defendant's movement*

---

relevant to a determination of reasonable suspicion and have been utilized in evaluating informant tips in this context. *See Alabama v. White*, 496 U.S. 325, 328-29 (1990) ("These factors are also relevant in the reasonable-suspicion context, although allowance must be made in applying them for the lesser showing required to meet that standard."); *Gonzales*, 1999-NMCA-027, ¶¶ 22-23; *cf., e.g.*, *Robbs*, 2006-NMCA-061, ¶ 14 (observing that "[w]hen significant aspects of the information are verified, an officer can reasonably believe in both the reliability of the information and the informant's veracity").

*through time is the most important factor* in assessing whether an officer's suspicion based on an informant's tip is reasonable.

*Id.* ¶ 14 (emphases added) (internal quotation marks and citations omitted). The type of corroborated, predictive information discussed in *Robbs* as crucial to the reasonable suspicion determination is entirely missing here.

**{35}** In this case, the tip provided no information about Defendant's future movements. Instead, the only verified portion of the tip was the type of vehicle Defendant drove—information that is readily available to the general public. *Robbs* distinguished tips, like this one, that merely describe a "status quo" fact—or one observable by the general public—from tips that predict a defendant's future movements. *See id.* ¶ 17. Verification of the latter generally is sufficient to support reasonable suspicion, while verification of the former is not. *See id.*; *see also Urioste*, 2002-NMSC-023, ¶ 13 ("It is much more difficult to form a reasonable suspicion when only a status quo is reported to police and that is all they see."); *cf., e.g., State v. Bedolla*, 1991-NMCA-002, ¶¶ 2, 15, 19, 111 N.M. 448, 806 P.2d 588 (holding that an anonymous tip, which provided that a man in a purple truck was selling drugs out of a hotel room, was an insufficient basis for reasonable suspicion because the tip lacked details and accurate predictions and the corroborated portions of the tip were readily available to any member of the public). Because the agents in this case verified only status quo information available to the general public, contrary to the majority, I believe that the agents' suspicion stemming from the tip—absent corroboration through additional investigation, a topic I turn to next—was unreasonable.[8] *See Bedolla*, 1991-NMCA-002, ¶ 15 (providing that where "the corroborated portions of the tip were readily available to any member of the public[,]" "[t]he limited information contained in the tip was [impermissibly] substituted for investigative work"); *cf. Gonzales*, 1999-NMCA-027, ¶ 28 (providing that where the record established the informant's credibility and basis of knowledge to justify the stop, independent corroboration was not necessary).

**{36}** Notwithstanding the uncorroborated tip, reasonable suspicion might still be supported by police investigation. *See Gonzales*, 1999-NMCA-027, ¶ 28; *Bedolla*, 1991-NMCA-002, ¶ 15. In my opinion, it was not. After the agents followed Defendant to the gas station, they observed a female exit a white pickup truck, go to the driver's side of Defendant's truck, and converse with him.[9] The agents did not witness any exchange;

---

[8] In light of this conclusion, I do not address Defendant's contention that because the stop occurred three days after the tip was provided, the tip was stale and could not give rise to reasonable suspicion. I note, however, that the majority's summary disregard of this argument (treating it as misplaced, due to its reliance on probable cause jurisprudence) seems unpersuasive in light of the majority's reliance on *Robbs*—a case involving contemporaneous law enforcement verification of a tip's details, *see* Majority Op. ¶¶ 8-9, something not involved in this case. *See generally Gonzales*, 1999-NMCA-027, ¶¶ 3, 24 (concluding that "the informant's observation [of illegal activity] was *sufficiently recent* [in relation to the stop] to support reasonable suspicion" (emphasis added)).

[9] The majority contends that it was not determined until later that "the individual in the white truck was Defendant's mother, and not the previous narcotics investigation target," Anthony Montoya. Majority Op. ¶ 12. Be that as it may, it should have been obvious to the agents at the time of the stop—when a woman exited the white truck—that the individual was not Anthony Montoya. *See generally State v. Neal*, 2007-NMSC-043, ¶¶ 4, 27, 142 N.M. 176, 164 P.3d 57 (concluding reasonable suspicion was lacking where the

they simply offered their belief, based on their training and experience, that a drug deal was about to occur. But, as the majority correctly points out, Majority Op. ¶ 13, our case law demands more.

**{37}** Our Supreme Court in *Martinez* explained that "[w]hen an officer relies upon training and experience to effectuate a stop, it is necessary that the officer explain *why* their knowledge of particular criminal practices gives special significance to the apparently innocent facts observed." 2020-NMSC-005, ¶ 22 (alteration, internal quotation marks, and citation omitted). The officer in *Martinez* testified that, based on his observations of specific conduct at a gas station known to the officer as a location for frequent drug trafficking, he suspected the defendant was engaged in drug sales. *Id.* ¶¶ 3-5. The officer described having witnessed, shortly before the stop, two separate instances of an individual entering the rear of the defendant's vehicle, remaining in the vehicle for a few minutes, and then leaving. *Id.* Asked why he suspected drug sales, the officer explained, "I've done them before, personally done them, go in and sit inside the back of the vehicle, right front passenger side, somewhere inside a vehicle, do the drug transaction, and then exit the vehicle. It's just—it was consistent with what I've done and seen." *Id.* ¶ 6 (alterations and internal quotation marks omitted). From this testimony, our Supreme Court concluded that the district court in *Martinez* properly deferred to the officer's opinion, based on his training and experience, that a drug transaction had occurred. *See id.* ¶¶ 24-25, 27.

**{38}** In contrast here, none of the agents explained how their knowledge of particular criminal practices led them to believe that a drug deal was about to occur at the gas station. The agents instead only baldly offered their belief of the same. In my opinion, this is insufficient under the standard set out in *Martinez. See id.* ¶ 22. And contrary to the majority's view, Majority Op. ¶ 13, I do not believe a generic recitation of the agents' backgrounds in narcotics investigations—untethered to the particular circumstances observed by the officers at the gas station—adequately substitutes for the particularized testimony *Martinez* requires.[10] *See* 2020-NMSC-005, ¶¶ 3-6. Indeed, nothing in the record explains why the agents reached the conclusions they reached *in this case*—i.e., why they believed a drug deal, as opposed to an apparently innocent conversation between two people at a gas station, had occurred. *See id.* ¶ 22. Because of this, there was no basis for the district court, or for this Court for that matter, to assess whether the agents' suspicion was reasonable or based instead impermissibly on a hunch. *See, e.g., Neal,* 2007-NMSC-043, ¶¶ 27, 31 (concluding that where the officer observed the defendant in a vehicle outside a house under surveillance for drug trafficking talking to an occupant of the house, but could not see or hear what was happening, even taking into account the officer's training and experience, "it was not reasonable for [the officer] to infer from the circumstances and his observations that [the d]efendant had been

defendant was seen associating with an unknown occupant of a house under investigation for drug activity).

10Although on appeal this Court may view the entire record in reviewing a trial court's denial of a motion to suppress, *see State v. Monafo,* 2016-NMCA-092, ¶ 10, 384 P.3d 134, I note that the agents' testimony describing their training and experience in narcotics investigations came at trial, well after the district court made its reasonable suspicion determination, and was not tied to their belief that a drug deal had occurred at the gas station. *See Martinez,* 2020-NMSC-005, ¶ 22.

involved in a drug transaction"); *see generally State v. Prince*, 2004-NMCA-127, ¶ 9, 136 N.M. 521, 101 P.3d 332 ("Generalized suspicions or unparticularized hunches that a person has been or is engaged in criminal activity do not suffice to justify a detention."). Consequently, I conclude that the agents' belief that a drug deal was about to happen is insufficient to support reasonable suspicion and likewise offers little if any corroboration of the informant tip.

**{39}** For all the foregoing reasons, I respectfully dissent from the majority's conclusion that the officers had reasonable suspicion to stop Defendant at the gas station.

**JENNIFER L. ATTREP, Judge**